**PARAGON–REVOLUTE CORPORA-
TION, Plaintiff-Appellant,**

v.

**C. F. PEASE COMPANY, Defend-
ant-Appellee.**

No. 11655.

United States Court of Appeals
Seventh Circuit.
Jan. 8, 1957.

Edward A. Haight, Chicago, Ill., B. Edward Shlesinger, Rochester, N. Y., for appellant.

Thomas F. McWilliams, W. McNeil Kennedy, Mann, Brown & McWilliams, Pope & Ballard, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff is the owner of Sullivan Patent No. 2,475,809, and alleges infringement of Claims 1, 3, 4 and 6. The suit was filed in Delaware, but on defendant's motion was transferred to the District Court for the Northern District of Illinois. 120 F.Supp. 488.[1]

Defendant filed an answer, and thereafter took the deposition of W. L. Sullivan, President of the plaintiff company, who was one of the inventors named in the Patent in suit. Plaintiff then took the deposition of John Taini, Chief Engineer of defendant. An affidavit of Frederick G. Wilde was filed. Defendant moved for summary judgment. Plaintiff's request for a hearing or oral argument was denied but the District Court permitted briefs to be filed. The Court granted summary judgment holding the claims in suit to be invalid. The Court

1. One of the reasons urged by the defendant for the transfer of the suit to Illinois was "That an orderly and intelligent presentation of the issues involved in this case will include the examination by the Court of such whiteprinting machines as may have been made by the Plaintiff, Paragon-Revolute Corporation, as may be alleged to come within the scope of the claims of the Sullivan Patent as well as an examination and inspection of the Pease Pacemaker and Zephyr Whiteprinting machines and in addition an inspection and examination of such models of the prior art structures as Defendant may submit to the Court."

did not pass upon the question of infringement.

The application for the Sullivan Patent was filed July 30, 1945, and the Patent was issued on July 12, 1949. Twenty United States and foreign patents were specifically considered by the Patent Office and cited of record in the application. One of these was United States Patent to Reed, No. 2,200,996, upon which the District Court principally relied in finding invalidity.

Claim 1 of the Patent in suit reads: "In a developing machine, a chamber adapted to contain gas, said chamber having an exposure area therein through which a photosensitive sheet can be exposed to said gas, an impervious belt movable in contact with the edges of the chamber at said area to close and seal the same, means for advancing said belt across said area, and a series of parallel rollers mounted close together in a steeply inclined upwardly directed row to have their axes extending at right angles to the direction of movement of said belt and to have their surfaces contact that surface of the belt which is presented to said area whereby said belt and said rollers cooperate to advance said photosensitive sheet past said area."

Claim 3 has similar wording with the added feature that the rollers have a plurality of peripheral channels defining lands on which the sheet rests, the lands of adjacent rollers being staggered with respect to one another. Claim 4 is similar to Claim 3 except for the provision that the channels are substantially wider than the lands. Claim 6 is likewise similar to Claim 3 but provides that the lands of adjacent rollers are staggered with respect to one another.

The machine of the Reed Patent has a perforated plate covering the exposure area of its developing chamber; and the photosensitive sheets that are to be developed in this machine, are carried across the perforated plate by an impervious belt to expose them to the gas escaping from the developing chamber through the perforations in the plate.

The machines built by defendant prior to 1949 were similar to the machine of the Reed Patent.

There was proof in the record before the District Court which would show there were disadvantages and objections to the perforated plate type of machine. In order for the plate to retain the requisite strength, perforations could be made only to the extent of 52% of the area, and thus the exposure area was limited to the same extent. Another objection was the friction on the sensitized sheet as it was carried over the perforated plate by the impervious belt. Another objection was wear of the endless belt by contact with the edges of the perforations. Still another was the condensation of the gas on the perforated plate which could affect the quality of the print. Yet another objection was that the friction at times tended to cause smearing and wrinkling of the paper. When certain kinds of paper or tracing cloth was used the perforated plate tended to cause the prints to become tacky.

Plaintiff's proof showed further that many skilled in the art tried to improve on the machine using the perforated plate, but that type of machine continued in general use for lack of a satisfactory substitute. Then Sullivan et al. came into the field and scrapped the perforated plate entirely, and instead, introduced the idea of using rollers as a wall for the exposure area of the developing chamber. Because the rollers had line contact only with the sensitized sheets, the areas across which the paper passed was almost a 100% exposure area. The development of the sheets was speeded up. It was found that a smaller developing tank could be used thus reducing the size of the machine. The Sullivan machine used approximately one third less ammonia, and the rollers minimized friction, stickiness and tackiness.

The Sullivan machine was a commercial success. Although plaintiff did not manufacture whiteprinting machines prior to 1944, today it is one of the largest manufacturers of such machines in

the country. Furthermore, until late 1948 defendant was making machines which utilized a perforated plate, while today defendant manufactures at least four models which utilize rollers and only one model utilizing a perforated plate.

■ With the proof as hereinbefore stated before the District Court there was no sufficient basis for a finding of invalidity of the claims in suit by a reference to the Reed Patent. The burden of proving a want of novelty is upon the party who avers it. 35 U.S.C. § 282. The patent is prima facie valid. 35 U.S.C. § 282. Furthermore, it is well settled that where the alleged invalidity is based upon a patent which was before the Patent Office and was rejected as an anticipation of the invention, the presumption of novelty and invention is greatly strengthened. Southern States Equipment Corp. v. USCO Power Equipment Corp., 5 Cir., 209 F.2d 111, 118; General Electric Co. v. Save Sales Co., 6 Cir., 82 F.2d 100, 103. As far as this record discloses Reed Patent No. 2,200,966 was the only patent upon which the trial court relied in making the finding of invalidity.

One of the hazards of endeavoring to decide a patent infringement suit by a summary judgment procedure is that there would not ordinarily be anything before the Court by which a history of the progress of the patent in suit in the Patent Office could be ascertained. Apparently the Trial Court held that the Reed machine was the full mechanical equivalent of the Sullivan et al. disclosure. We think on the record which was before the District Court it was error to hold that the surface rollers in the Sullivan patent served the same purpose as the perforated plate of the Reed patent.

■ It seems apparent to us that there are present in this case genuine issues of material facts which could not be decided upon a motion for summary judgment. This is a case where there should have been a trial upon the merits. What we have said is based entirely on the record before us. We do not intend to indicate our view as to what the final decision in this case should be after a complete trial on the merits has been held in the District Court.

Reversed and remanded for a trial on the merits.