**ENTERPRISE RAILWAY EQUIPMENT COMPANY, an Illinois corporation, Plaintiff-Appellee,**

v.

**KEYSTONE RAILWAY EQUIPMENT COMPANY, an Illinois corporation, Defendant-Appellant.**

**No. 12508.**

United States Court of Appeals Seventh Circuit.

May 20, 1959.

Rehearing Denied June 11, 1959.

Benton Baker, Max W. Zabel, Bayard Jones, Chicago, Ill., for defendant-appellant.

Edward A. Haight, Robert R. Lockwood, John W. Hofeldt, Chicago, Ill., for plaintiff-appellee.

Before DUFFY, Chief Judge, SCHNACKENBERG, Circuit Judge, and WHAM, District Judge.

SCHNACKENBERG, Circuit Judge.

This is a patent infringement action. Plaintiff, Enterprise Railway Equipment Company, charged defendant, Keystone Railway Equipment Company, both Illinois corporations, with infringement of Dorey U. S. patent No. 2,791,973. Defendant denied infringement and set up a defense of invalidity of the patent. The district court held the patent valid and infringed, and entered a judgment, findings of fact and conclusions of law. Defendant has appealed.

The patent in suit is entitled "Operating Mechanism For Sliding Gate For A Discharge Outlet Mounted On A Load Containing Hopper Of A Railway Car." It was issued to plaintiff, as assignee, on May 14, 1957 upon an application filed January 4, 1952 by G. B. Dorey, its employee. The structure disclosed and claimed in the patent in suit has particular application to the outlet opening of a covered hopper railway car. Such a railway car, as the prior art reveals, is one used to transport bulk granular materials, such as cement, grain, sugar and the like, which require protection from contamination and from the weather. Such lading is discharged or unloaded from these cars through openings or outlets called hoppers which are located at the bottom of the cars. The new and novel structure disclosed and claimed by Dorey closes and opens these hopper outlets. Claims 1, 2, 4 and 5 were before the district court for adjudication.

The structure of the Dorey patent is a dual one having a unitary supporting structure with separate closure mechanisms. These mechanisms comprise: a generally rectangular frame for each opening with sidewalls having inwardly extending ledge surfaces, rail members to support the gate in the form of angle bars extending between the frames, a gate or door to close the opening provided with bearings in arms or brackets extending outwardly from its outer edge, a shaft journaled in the bearings and operable by means of an operating head extending outwardly from the frame, pinions mounted on the shaft for rotation with the latter, racks overlying the pinions and consisting of body plate welded to and carried by the housing members and serrated (notched) to provide teeth, the housing members being riveted at their ends to the hopper frames, side flanges of the housing members lying at each side of the respective pinions to restrict axial movement of the latter on the shaft and thereby maintain them in alignment with the racks, and a guide plate or strap secured to the underside of the gate from which it is spaced downwardly by a boss and having projecting ends extending underneath horizontal flange portions of rail members for the stated purpose of providing a stable supporting structure for the gate and to counteract a canting tendency due to the location of the operating head outwardly from the side of the gate when pressure is applied to rotate the shaft.

In prior art patents the structure of the Dorey patent appears. They are Campbell, No. 2,072,292, dated March 2, 1937, Batho, No. 2,222,280, dated November 19, 1940, and McBride, No. 2,-386,702, dated October 9, 1945.

Campbell, which is entitled "Load Discharging Car", shows the combination of a hopper and a slidable gate operated by rack and pinion means. The rack is provided on the gate and the pinion means is mounted on a shaft which rotates about a stationary axis. The difference from the Dorey patent in suit is a reversal of positions of elements. Dorey, during the pendency of his application admitted to the patent office that the combination of a hopper and slidable gate operated by rack and pinion means was old and found in prior patents; but insisted the particular reversal of the elements as found in the patent in suit was an invention and not obvious

to one in that field. However, defendant's expert witness James T. Smith testified, without contradiction, that the arrangement found in Dorey was a conventional form of mechanism for moving movable parts in relation to stationary parts, and common in connection with lathes, steam-shovels, windows, and doors. He also pointed out in uncontradicted testimony that the reversal arrangement in Dorey was like the rack and pinion setup of the lathe in Bixby, No. 802,366, dated October 24, 1905, and the hopper discharge of McBride, infra, as well as other patents introduced into evidence. Thus we have in Campbell a load discharging car similar to Dorey except for a reversal of the positions of the rack and pinion, which reversal is old in the art.

McBride, No. 2,386,702, is entitled "Hopper Discharge". The similarities between Dorey and this patent are many: a hopper door operated by a rack and pinion; the pinion, shaft, and bearing attached to the movable door while the rack is stationary; a cast steel or some type of cast metal frame; a door mounted inside the frame and sliding outward through a slot in the casting; a square shaft journal and bearings; bearings integrally cast with the doors; two pinions mounted on a square shaft; a rack secured at one end to the cast frame and at the other end secured by some vertical connection to the car or in Dorey from one hopper to another; a ledge that carries the door while the door is in the closed position; and similar manner of operation.

Plaintiff contends that McBride differs in structure and mode of operation. Its argument stresses that in McBride the shaft "should hold up" the door whereas in Dorey the door "supports" the shaft. Expert witnesses Clarence T. Fishleigh for plaintiff and Smith for defendant were examined extensively on this point. In comparing the two patents it is apparent that the door in Dorey is lower than the center of the shaft, and that in McBride it is higher than the center of the shaft. In both patents the pinion carrying shafts are journaled in bearings carried by the door. Conceding that some of the weight of the McBride door is supported by the shaft when the door is in some positions, we do not think that this distinguishes McBride from the patent in suit. This is a matter of choice to those of ordinary skill in the art especially since no new or advantageous result is claimed in the Dorey arrangement of having the door lower than the center of the shaft. Plaintiff also calls attention to the Dorey patent's rails along which the door slides in opening and closing and to the absence of rails in McBride. Defendant admits that this is a difference. This difference, however, has no relation to or bearing upon an adaptation of McBride's shaft-pinion and rack arrangement to the structure of the Campbell patent, supra, and Batho, No. 2,222,280, dated November 19, 1940, which have a ledge and rail structure similar to the Dorey patent in suit. Aside from the two insignificant differences mentioned above, namely the shaft carrying some of the weight of the door in some positions and the presence of rails, the anticipation of McBride as prior art is revealed in comparing McBride Claim 9 and Dorey Claim 1.

### McBride No. 9

"In a railway hopper car having a floor provided with a door frame defining a discharge outlet, a door slidably mounted on said frame and movable from a closed to an open position for discharge of lading from the outlet, an inverted rack bar carried by said frame and extending toward one side thereof, a shaft journaled in the free end of said door and carrying a pinion engageable with said rack bar, and means to rotate said shaft and pinion thereby causing the latter to roll along the rack bar to open said door."

### Dorey No. 1

"A hopper outlet construction comprising, in combination, a rectangular frame defining the opening

in the hopper, rails extending along opposite sides of said frame and projecting laterally therefrom, a gate slidably mounted on and supported directly by said rails for closing said opening, a shaft rotatably mounted on and supported only by said gate transversely of its path of movement, a pair of pinions non-rotatably mounted on said shaft in spaced relation, and a pair of racks extending laterally of said frame parallel to said rails and engaged individually by said pinions whereby, on rotation of said shaft, said gate slides along said rails in one direction or the other depending upon the direction in which said shaft is rotated."

Dorey claims No. 2, 4, and 5, which are refinements of the elements claimed in No. 1, are also anticipated in McBride, Campbell, and Batho.

It is enough to defeat a patent under 35 U.S.C.A. § 103 that from one or more related prior art patents, one having ordinary skill in the art would find the claimed invention obvious. Hobbs v. Wisconsin Power & Light Co., 7 Cir., 1957, 250 F.2d 100, 104; General Foods Corp. v. Triangle Mfg. Co., 7 Cir., 1958, 253 F.2d 227, 230; Powder Power Tool Corp. v. Powder Actuated Tool Co., 7 Cir., 1956, 230 F.2d 409; 69 C.J.S. Patents § 53, p. 259, et seq.

We hold that the Dorey patent in suit is invalid because the prior art in Campbell and McBride are such that the Dorey subject matter as a whole would have been obvious to a person having ordinary skill in the art to which they pertain.

The device of the patent in suit has not been made commercially nor licensed, and this was conceded by counsel for plaintiff in his opening statement to the district court. Plaintiff has continued to manufacture a hopper door assembly of a kind which it has made for many years and which is marked under Campbell, supra, and Batho, supra.

Insofar as the district court's findings of fact make no specific mention of any particular prior art, but merely refer to the Dorey patent in suit as being "new and useful and is not anticipated by the prior art," they are clearly erroneous. 28 U.S.C.A. Rule 52(a).

We hold the patent in suit invalid. So holding, we make no ruling as to infringement, because an invalid patent cannot be infringed. Accordingly, the judgment of the district court is reversed.

Reversed.

DUFFY, Chief Judge, dissenting.

As I read the majority opinion, the principal reason for holding the patent in suit invalid is that one having ordinary skill in the art would find the claimed invention obvious. Also, emphasis is laid on the fact that the device of the patent in suit has not been manufactured on a commercial basis.

Defendant pleaded lack of novelty but didn't prove it. Defendant's expert in effect conceded there was no anticipation to be found in any of the seventy-two prior art patents dating back to 1837 which defendant produced after three intensive searches.

The District Court heard the testimony of experts on both sides. The models, the accused device and some of the prior art references were explained to the Court by these witnesses. They also explained various charts.

The District Court found the prior art relied upon by defendant is no better than that cited and considered by the Patent Office. Defendant's expert Smith testified the closest reference in the prior art was McBride Patent No. 2,386,702. This patent was also the principal reference in the Patent Office. In Paragon-Revolute Corp. v. C. F. Pease Co., 7 Cir., 239 F.2d 746, at page 748, we said:

" * * * Furthermore, it is well settled that where the alleged invalidity is based upon a patent which was before the Patent Office and was rejected as an

anticipation of the invention, the presumption of novelty and invention is greatly strengthened. * * *" See also, Artmoore Co. v. Dayless Mfg. Co., Inc., 7 Cir., 208 F.2d 1, and Hunt v. Armour & Co., 7 Cir., 185 F.2d 722.

In my view, the findings of the District Court that the invention of the Dorey Patent in suit would not have been obvious to a person skilled in the art, are not clearly erroneous and should be sustained. The same is true on the question of infringement. Furthermore, because the owner of a patent has not manufactured the device on a commercial scale does not reflect upon the validity of the patent.

I would sustain the judgment of the District Court.