Samuel SAUL, Jr. and Rack Engineering Company, a Partnership (now Rack Engineering Corporation), Plaintiffs-Appellants,

v.

INTERNATIONAL HARVESTER COMPANY, a corporation, Defendant-Appellee.

No. 12642.

United States Court of Appeals Seventh Circuit.

March 23, 1960.

Elmer S. Utzler, Pittsburgh, Pa., Charles B. Spangenberg, Chicago, Ill., Christy, Parmelee & Strickland, William H. Parmelee, Pittsburgh, Pa., for appellants.

Arnold J. Ericsen, Milwaukee, Wis., Charles L. Byron, Hilmond O. Vogel, Chicago, Ill., Peter P. Price, Grand Rapids, Mich., Byron, Hume, Groen & Clement, Chicago, Ill., Price & Heneveld, Grand Rapids, Mich., of counsel, for appellee.

Before HASTINGS, Chief Judge, and DUFFY and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiffs brought suit for injunction and accounting for profits and damages resulting from (1) alleged infringement of patent owned by plaintiff, Samuel Saul, Jr., hereinafter called "Saul", on which plaintiff Rack Engineering Company, now Rack Engineering Corporation, hereinafter called "Rack", had an exclusive license; and (2) alleged unjust enrichment from improper use and publication of engineering information received in confidence from plaintiffs prior to issue of the patent aforesaid.

The alleged invention refers to a wheeled, adjustable peg rack for storage and transfer of gears between manufacturing and gear assembly departments. Mounted on a wheeled base is a tilted panel with a plurality of spaced channels, flanges in the front and rear face of the panel, and pegs or pins inserted in the channels to hold gears, so that there is no protrusion of pins or gears beyond the area of the base. Small gears may be placed on each pin, large gears on pins in two or more adjacent channels. It is easily adaptable: the pins, though held in place, can be removed by the use of slight force.

Many of the material facts are contested. The District Court found that in 1947, the Louisville, Kentucky, plant of defendant, International Harvester Company, hereinafter called "Harvester", became dissatisfied with the type of gear rack which Saul had been selling Harvester. It was described by plaintiffs as a compartmented hook rack. An individual peg, having a hook at its base, could be hooked into a pocket of a horizontal bar.

Contrary to plaintiffs' assertions, the District Judge found that an improved rack was designed by Harvester's Louisville plant engineering designer, William J. Altman. A partial model, which incorporated substantially all the ideas subsequently put into the patent, was built at Louisville, under Altman's supervision by Harvester's millwright, Carl Bachmann. During April, May, and June, 1948, this model was seen in Louisville by the plant manager, H. S. Garceau, and Harry Armstrong, who was Harvester's staff assistant in manufacturing research at Harvester's Chicago establishment. The model was also shown to Saul then or in July, 1948, and he said that he understood what was wanted and would produce it.

Saul, on the other hand, testified that the sole complaint he received with respect to the earlier rack concerned its cost and limited capacity, that he had a number of discussions at Louisville about increasing the number of pegs and suggested to Altman the use of a single panel of continuous corrugations, but that he later decided on square tubes and channels, to be used with pegs having spring detents (which last are not, however, recited in the claims) only after he had employed Lloyd H. Fenstermaker, Chief Engineer for Rack from July 1948 to September 1950. Fenstermaker was co-patentee with Saul, but was not interested in this litigation. He testified as to drawings made by him October 1, 1948, prior to receipt of drawings from Altman. Plaintiffs contend that the initial prototype was built in plaintiffs' shop and shipped to Louisville for testing in August, 1948. The pins in that model were not shouldered as in the patent and did not have detent balls.

The District Court found that this sample rack was based on the rack shown Saul in June or July, 1948; that after tests, Altman sent blueprints of suggested changes in November 1, 1948, and, in

December, 1948, ordered a number of such racks, which have been in use continuously at Louisville.

December 8, 1948, Saul and Fenstermaker filed their application for the patent in suit, which was granted January 27, 1953. The District Court found the evidence convincing beyond a reasonable doubt that Harvester's employees at Louisville conceived and developed every element recited in the claims in the patent in suit and communicated their ideas to Saul to be incorporated into the quotation he might submit to Harvester.

■ It is axiomatic that this Court may not set aside the District Court's findings of fact unless we find them clearly erroneous, and that due regard must be given to the opportunity of the Trial Court to judge of the credibility of the witnesses. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; Wilson v. Seng, 7 Cir., 1952, 194 F.2d 399, 402.

■■ Evaluation of oral testimony is a function of the Trial Court. United States v. Aluminum Co., 2 Cir., 1945, 148 F.2d 416, 433. This Court will not disturb the Trial Court's findings of credibility and weight except in the most unusual circumstances. Rosenthal v. Hildebrand, 7 Cir., 1957, 242 F.2d 607, 608. Plaintiffs contend that such circumstances exist here. They argue that the weight of defendant's evidence as to prior invention is insufficient, as a matter of law, to support the District Court's findings.

For example, plaintiffs consider oral testimony of Harvester's employees respecting precise dates of events occurring about ten years ago as incredible. However, the record discloses that on March 15, 1948, there was an explosion in Harvester's engine test building. Seven men were killed, twenty others were injured. Harvester's employee witnesses related dates of events pertinent to this case by reference to the clearly recalled date of the disaster. The dates of Harry Armstrong's visit to the Louisville plant are evidenced by a letter written to him June 21, 1948, on his return to Chicago. He did not again visit the Louisville plant until January, 1954.

Plaintiffs contend further that some of the gear loading diagrams dated and initialed by Altman were not only self-serving but have also been shown to be falsely dated. The diagrams in question bear the dates March 24 and March 25, 1948. They refer to the earlier compartmented hook rack as well as to the peg rack of the patent in suit. Altman testified that loading diagrams were made for both types of rack because both would be used for a time. Some of the old racks were used until sometime in 1950. Plaintiffs argue that both racks could not be in simultaneous use until after the first order for the new racks was filled early in 1949. Harvester's employees testified that loading diagrams were made well in advance of actual receipt and use of the new racks. Harvester also introduced (Exhibit 67) a still earlier loading diagram for the new rack which bears Altman's initials and the date, February 23, 1948. Plaintiffs contend that the date of this drawing must be erroneous because it refers to the new rack as "standard", although on February 23, 1948, it had not yet been built or tested. Armstrong testified that he saw this diagram in Louisville in May, 1948. Had these loading diagrams been made only after receipt of the new racks in 1949, Armstrong could not have seen any of them in Louisville as he was back in Chicago long before that date and did not again visit Louisville until January, 1954.

Other contested factual issues show similar conflicts in evidence. The District Judge who heard and saw the witnesses made the necessary determinations of credibility and weight. Careful check of the record shows ample support for the findings which he made.

The District Judge found that gear racks had been used in industrial operations from almost the beginning of mass production operations, and that they usually were made with a base supported on wheels or casters and an upright structure from which pins protruded.

The alleged novelty in the combination here was flexibility through pins which could be removed and replaced quickly in different positions, and supporting channels close enough to provide additional support for larger gears from channels adjacent to those on which they directly rested, the whole being of strong but relatively light construction. Plaintiffs contend that because of its flexibility the capacity of the rack is about double that of a comparable-sized rack lacking the flexible pin arrangement, and that this clearly represents a useful improvement in the gear rack art.

■■ The learned District Judge, in his opinion, stressed the statutory burden which rests on the party asserting invalidity of a patent. Title 35 U.S.C.A. § 282. He also noted the strengthened presumption of invention resulting from the fact that alleged invalidity is here based on a patent which was before the Patent Office and which was there rejected as an anticipation of the invention. Paragon-Revolute Corp. v. C. F. Pease Co., 7 Cir., 1957, 239 F.2d 746, 748. Nevertheless, the District Court held that, notwithstanding the prima facie validity of the claims of the patent in suit, each element thereof was old, and that the combination did not rise to the dignity of invention; that the structural differences over the prior art amounted to nothing more than routine mechanical skill. The District Judge's Opinion (Joint Appendix, page 483, footnote 1) lists the prior art as follows:

> Alderman Patent 2,050,775 suggests closely spaced sloping slats, from which protrude pins; see also Babcock Patent 931,669, Cronin Patent 613,760, Norton Patent 1,698,-318; Saul's earlier Patent 2,316,892 suggests removable pins; Ohme Patent 2,246,692 suggests U-shaped channels with pegs inserted through larger front openings and through reduced rear openings; see also Lehman Patent 1,380,570, Hecker Patent 686,063, Hade Patent 2,451,674.

Plaintiffs analyze these patents and urge that they teach the elements of the patent in suit only in the light of the teaching of the patent in suit itself. We have carefully considered these patents and agree with the District Judge that the patent in suit does not exhibit invention, and is, therefore, invalid. Hyster Co. v. Hunt Foods, Inc., 7 Cir., 1959, 263 F.2d 130.

■ Plaintiffs' representatives called upon Harvester's Milwaukee plant late in 1949 to interest that division in the use of gear racks. A set of loading diagrams, drawings, and a special demonstration sample rack were delivered to Milwaukee in negotiations carried on over a two-year period. In November, 1952, the Milwaukee plant requested bids from plaintiffs, sending a drawing of the accused rack. Similar requests and drawings were sent to other manufacturers.

Although plaintiffs notified the Milwaukee plant that a patent application was pending, the Milwaukee plant gave a contract to the Brummeler Company for the manufacture of the accused rack. Harvester's attorney wrote plaintiffs denying infringement of the plaintiffs' patent, which, by then, had issued. Plaintiffs then filed suit charging infringement, and unjust enrichment by misuse of plaintiffs' property which had been allegedly entrusted to Harvester, which, in turn, had accepted plaintiffs' services in trying to organize a program for use of gear racks at Milwaukee, but which had then publicized the plaintiffs' structure (as yet unpatented) to plaintiffs' competitors.

The District Court found that Harvester's material handling man at Milwaukee had seen a rack of plaintiffs' manufacture at Harvester's Louisville plant before any disclosures were made by plaintiffs' representatives to the Milwaukee plant. Nevertheless, plaintiffs contend it was a breach of trust, misuse and conversion of plaintiffs' property, for the Milwaukee plant to call on plaintiffs for a special sample, and to prepare drawings (before returning the sample) for the purpose of competitive bidding, all without first advising plaintiffs of the purpose for which the sample was sought.

The learned District Judge found that the dealings between plaintiffs and the Milwaukee plant were typical of those between a prospective vendor and vendee. He further found that Harvester's Milwaukee employees did not distribute copies of plaintiffs' drawings but prepared their own drawings which were different in some respects from those of plaintiffs'. The record shows ample support for the District Judge's conclusions that Harvester violated no confidential relationship and that Harvester did not become unjustly enriched at plaintiffs' expense.

Other points argued by plaintiffs have been considered by this Court. It would unduly lengthen this opinion to no good purpose to comment on each individually. We find no error. The judgment of the Court below is

Affirmed.