**AMP INCORPORATED, Plaintiff-Appellant,**

v.

**VACO PRODUCTS CO., Defendant-Appellee.**

No. 12835.

United States Court of Appeals Seventh Circuit.

June 28, 1960.

Rehearing Denied En Banc Aug. 12, 1960.

Horace Dawson, Chicago, Ill., William C. Conner, Truman S. Safford, New York City, John B. Lungmus, Chicago, Ill., for plaintiff-appellant. William J. Keating, Harrisburg, Pa., Curtis, Morris & Safford, New York City, Dawson, Tilton, Fallon & Lungmus, Chicago, Ill., of counsel.

Albert I. Kegan, David B. Berger, Chicago, Ill., for appellee.

Before DUFFY and KNOCH, Circuit Judges, and GRUBB, District Judge.

DUFFY, Circuit Judge.

The complaint charges infringement of Wenger Patent No. 2,560,318 on a device for cutting bolts and screws. The District Court, by judgment, dismissed the suit declaring the patent invalid on the ground of obviousness, and also dismissed the charge of unfair competition. This appeal is from that part of the judgment dismissing the patent infringement count and declaring the patent to be invalid.

The patent in suit was issued on July 10, 1951, on application of Frank J. Wenger, filed July 6, 1948. Plaintiff became the owner of the patent by assignment. The patent relates to a tool for cutting bolts and screws to a desired length without damaging their threads.

Bolts and screws have been in common use at least since the so-called Industrial Revolution, about 1760. Many times a bolt or screw of a particular length is

needed and not available. Various procedures and devices have been employed in the past for shortening available bolts and screws to a desired length. One method was cutting with a hack-saw. When smaller screws were used, side-cutting pliers could be used. Special tools of considerable size were utilized for cutting larger sized bolts and screws, many of them having guillotine-type cutting jaws.

The evidence in the record before us discloses that these prior methods and apparatus, when used, damaged the threads of the bolts and screws being cut. When a hacksaw was used, the threads adjacent to the cut were inevitably damaged, and burrs were usually formed. In using a commercial bolt cutter and side-cutting pliers, the ends of the threads were bent laterally, and the end of the bolt or screw was pinched to a "chisel point" described in the testimony as an overall shape comparable to that of the end of a pillow. In the blunt-edged shearing device of the type shown in the Grover Patent No. 13570, the edges of the threads were flattened on one side.

After the threads were damaged by the cutting device, the bolts and screws could not be used until the threads had been "dressed" or restored to their original shape. This was often done by filing them with a sharp-cornered file. This was a time-consuming job, and unless done with care, the threads might easily be further damaged.

Another method used was to thread a nut on to the screw, and the screw was then cut behind the nut. The nut was then unthreaded from the screw for the purpose of causing the threads of the nut to reform the threads of the screw. Usually it took considerable force to remove the nut from the screw after the threads had been distorted. Hence, it often was necessary to hold the nut by a vise or other comparable means. Added difficulty was caused by the fact the threads of the screw were usually of a harder material than the threads of the nut.

Plaintiff contends that although all previously known ways of shortening bolts and screws were clumsy and slow, no one, over a period of two hundred years, had been able to devise a better method until the Wenger invention. Plaintiff claims this invention represents the first and only significant breakthrough in bolt-cutting technique.

The patent in suit illustrates a pliers-type hand tool which consists of a pair of levers comprising jaw portions and handle portions. These levers are pivotally connected together by a pin. In the overlapping portions of the levers adjacent to the pivot pin are three cooperating pairs of holes. On one side, each of the three holes is threaded to receive the shank of a screw of a pre-determined size, while the matching hole in the other lever is of a larger diameter to freely receive the projecting portion of the screw.

After a screw is threaded through the first hole and into the opposite matching hole, the projected shank is sheared off cleanly by compressing the handles of the tool. The remaining portion of the screw can then be easily unthreaded. Since the threaded hole conforms accurately to the intricate shape of the threads of the shank of the screw, it distributes the shearing force uniformly throughout the entire surface of the screw and thus prevents damage. When the screw is removed from the tool, it is ready for immediate use without the necessity of "dressing" the threads.

Plaintiff acquired the invention in suit in 1948, and shortly thereafter placed on the market hand tools incorporating the bolt and the screw-cutting feature. The device met with commercial success. At the time of the trial, plaintiff was selling approximately 150,000 tools annually. The United States Navy specified the patented bolt-cutting elements as standard equipment in certain types of hand tools.

In 1957, defendant added to its Model 1902 crimping pliers which had been on the market many years, bolt and screw-cutting elements practically identical to

those in the plaintiff's tools. Defendant admits infringement if the patent is valid. Defendant does not deny that it incorporated the bolt and screw-cutting elements after having seen plaintiff's tools on the market.

In holding the patent in suit invalid, the District Court referred to Grover Patent No. 13570 which was issued in 1855. This patent had a pair of cooperating round holes for cutting wire. It could have been used to cut screws but, if so used, it would result in flattening the outer edges of the threads of the screw so that the threads would have to be "dressed" before the screws could be used.

The District Court found the only difference between the patented invention and the disclosure of the Grover Patent resided in threading one of the holes, and stated that this constituted an obvious change involving only "adoption of a well known mechanical expedient." [178 F.Supp. 496, 498] It is apparent such conclusion was the sole basis for the District Court's determination that the patent in suit was invalid.

There was also an attempt by defendant to prove prior invention and use by one Stevens. However, the District Court did not sustain this claim, and placed no reliance on the alleged prior public use by Stevens.

This is one of the few patent cases which has reached this Court where the sole patent relied on by the District Court was cited by the Patent Office and given full consideration during the prosecution of the application for the patent in suit.

In Armour & Company v. Wilson & Co., Inc., 7 Cir., 274 F.2d 143, we discussed the question of obviousness in a patent suit. We said that what constitutes a patentable invention can be broken down into component parts, and that the final step was to determine whether the differences between the subject to be patented and the prior art would have been obvious to a person having an ordinary skill in the art. We said this called for the application of the correct legal criterion and was a question of law.

The Grover Patent was issued in 1855 which was ninety-six years prior to the date of the patent in suit. That it was not obvious to provide a threaded hole for laterally supporting the threads of a screw or bolt adjacent to the plane along which such screw or bolt is being sheared, is shown quite conclusively by the fact that for ninety-six years no one ever did conceive this idea despite the recognized need for some means of shortening bolts and screws without damage.

It is not accurate to say that the only change needed to convert the Grover tool into a tool of the type covered by the patent in suit, was the threading of one of the holes of the Grover tool. One hole would have to be threaded in a manner so that the threaded shank of the screw or bolt to be cut could be threaded into it. However, the other matching hole would have to be enlarged to permit the projecting portion of the screw to be received freely by it. These changes would adapt the tool only for the cutting of screws of a larger size than could have been cut with damage to the threads by the Grover tool before the changes were made.

The patent in suit does not claim threaded holes are novel *per se*. Instead, it claims the threaded hole as one of the elements in a novel combination designed to accomplish a result entirely different from the usual purposes of threaded holes, and a result which had not been accomplished by any device theretofore known.

The District Court apparently felt the invention was too simple to reach the level of inventiveness required for patentability. The hand tool incorporating the invention of the patent in suit is admittedly of uncomplicated construction. But the fact that the solution was simple does not mean the solution was obvious. Many thousands of mechanics over a period of nearly one hundred years had cut bolts and screws in the old cumbersome thread-damaging ways,

yet did not come up with the solution shown by the patent in suit.

Courts have rejected as a test of invention the apparent simplicity of an invention when viewed in retrospect. Diamond Rubber Company of New York v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527; Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721. In Charles Peckat Mfg. Co. v. Jacobs, 7 Cir., 178 F.2d 794, 801, this Court said: "That Peckat's device now seems comparatively simple, of course, is no criterion of his invention. 'The apparent simplicity of a new device often leads an inexperienced person to think that it would have occurred to anyone familiar with the subject; but the decisive answer is that with dozens and perhaps hundreds of others laboring in the same field, it had never occurred to anyone before. The practiced eye of an ordinary mechanic may be sufficiently trusted to see what ought to be apparent to everyone.' (Citing cases)"

Pertinent is the comment of this Court in Pyle National Co. v. Lewin, 7 Cir., 92 F.2d 628, 630: "It is also insisted that the idea involved in appellee's device is so simple and obvious it does not constitute invention. True, it now has that appearance. The fact, however, that this improvement was long overlooked, using devices far less satisfactory, cannot be ignored."

35 U.S.C. § 282 states, in part: "A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it." In the case at bar, the presumption of validity is extremely strong. The only prior art relied on by the District Court in its finding of invalidity was Grover Patent No. 13570. Under such circumstances, the courts have uniformly held that the presumption of validity is greatly reinforced.

As this Court stated in Paragon-Revolute Corp. v. C. F. Pease Co., 7 Cir., 239 F.2d 746, 748: "The burden of proving a want of novelty is upon the party who avers it. 35 U.S.C. § 282. The patent is prima facie valid. 35 U.S.C. § 282. Furthermore, it is well settled that where the alleged invalidity is based upon a patent which was before the Patent Office and was rejected as an anticipation of the invention, the presumption of novelty and invention is greatly strengthened." Other decisions of this Court to the same effect are Hunt v. Armour & Company, 7 Cir., 185 F.2d 722, 726; Copeman Laboratories Co. v. General Plastics Corp., 7 Cir., 149 F.2d 962, 964.

We think that Wenger made a significant contribution to the mechanical art by providing the first device in history capable of cutting bolts and screws without damaging their threads. This contribution is deserving of the protection of the patent laws, and we hold that Wenger Patent No. 2,560,318 is valid and was infringed.

Reversed and remanded.