**SIMMONS COMPANY, Plaintiff-Appellant,**

v.

**HILL–ROM COMPANY, Defendant-Appellee.**

**No. 15139.**

United States Court of Appeals
Seventh Circuit.

Nov. 18, 1965.

Francis A. Even, William E. Anderson, James J. Schumann, Anderson, Luedeka, Fitch, Even & Tabin, Chicago, Ill., for appellant.

Edward A. Haight, Chicago, Ill., Thomas M. Scanlon, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., Haight, Simmons & Hofeldt, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

Simmons Company, plaintiff-appellant, the owner by assignment of Williams et al. U. S. Patent No. 3,081,463, relating to a motor operated hospital bed, brought suit in the District Court charging Hill-Rom Company, defendant-appellee, with infringement of Claims 1 to 6, inclusive of the patent. The defendant asserted invalidity of the patent and denied infringement. Following trial of the issues the District Court made and entered findings of fact and conclusions of law upon the basis of which the court entered judgment for the defendant. The court found and concluded, among other things, that the Claims in suit are invalid for lack of invention and because anticipated by prior art disclosures.

The subject matter of the patent in suit is a hospital bed in which the entire underframe consists of a box-like girder structure extending longitudinally of the bed from head to foot beneath its center, and having a width less than that of the body supporting sections. The articulated sections of the overlying, patient-supporting surface are pivoted to a surmounted cross member of the underframe. All of the articulated sections are otherwise supported in their various positions of adjustment by linkage connections to the central girder, within the confines of which the operating mechanism of the bed is housed.

The plaintiff asserts that the cruciform understructure, composed of the narrow centrally located box-like girder and its surmounted cross member which serves as a portion of the patient supporting surface, eliminates the employment of conventional side rails as part of a rectangular or perimeter framing supporting the load of the occupant's weight, and thus provides an unobstructed space between the side edges of the patient-supporting surface and the floor to permit more ready access to the floor beneath the bed for cleaning purposes, an assistance to hospital sanitation, and provides space for storage of the retractable safety side or guard frame which is the subject of other Claims of the patent which are not in suit. Plaintiff further asserts that the complete enclosure of the operating mechanism within the narrow box-like girder is an additional sanitary feature.

Both plaintiff's commercial structure and the defendant's accused devices have enjoyed commercial success. They are the two leaders in the hospital bed field.

The Claims in suit (Claims 1 to 6, inclusive) cover the combination of a plurality of body-supporting sections, the underframe structure heretofore described, end frames (or floor engaging means) and means between the sections and underframe to maintain the sections in different positions (in the case of

Claim 5 elevating mechanism for raising and lowering the entire bed).

In an unchallenged finding of fact which is amply supported by the record, the District Court found:

"6. Hospital beds have been known for many years prior to the alleged invention of the patent in suit. Such beds commonly had provision for permitting a patient to sit up or assume various positions in bed by adjustment of the back rest (head section), thigh section and foot section of the bed (sometimes referred to in the patent as 'a plurality of body-supporting sections which are relatively movable to place said sections in different supporting positions'). The prior art beds had underframes of various types. They also commonly had end frames on which were mounted headboards and footboards (sometimes called 'floor-engaging means' in the patent in suit). Such beds had means to maintain the back rest, thigh section, etc. in various positions of adjustment. In addition, some hospital beds had provision for raising the bed to a convenient height for a doctor or nurse to attend the patient and for lowering the bed for a patient to get in and out of bed."

It thus appears that the element of the combination which must be relied upon as endowing the combination with some unusual or surprising consequence, and as constituting such improvement over the prior art as serves to make that contribution to useful knowledge requisite to establish invention, is the narrow centrally located box-like girder and surmounted cross member underframe structure which serves to enclose the operating mechanism and substitutes for conventional side rails.

■ On the basis of the evidence before it, including the testimony of expert witnesses, the trial court found complete anticipation of Claims 1–4 and 6 and the anticipation of all except the raising and lowering of the entire bed feature of Claim 5 [1] in Draper, U. S. Patent No. 2,996,732 and the Relax-A-Bed manufactured thereunder and placed on sale more than one year prior to the application for the patent in suit. We have carefully reviewed the record and are unable to conclude that the findings concerning the prior art are clearly erroneous. Rule 52 (a) of the Federal Rules of Civil Procedure is therefore applicable and those findings are binding upon review. Armour & Co. v. Wilson & Co., 7 Cir., 274 F.2d 143, 151–157; Briggs v. M & J Diesel Locomotive Filter Corp., 7 Cir., 342 F.2d 573, 574.

■ Neither the Draper patent nor the devices manufactured thereunder were before the Patent Office. Consequently, the statutory presumption of validity attaching to the issuance of a patent is of no aid to the plaintiff. Hobbs v. Wisconsin Power & Light Compay, 7 Cir., 250 F.2d 100; A R Inc. v. Electro-Voice Incorporated, 7 Cir., 311 F.2d 508, 512–513.

■ The record discloses, and the District Court found, that one of defendant's commercial structures, which pre-dated the application for the patent in suit by many years, had an underframe with recessed side rails. In the face of this and the other prior art disclosures we are convinced that the court's conclusion that each of the claims in suit is invalid for lack of invention represents the application of correct legal criteria. To a person having ordinary skill in the art the use of the box section of the Draper patent, albeit in a more narrow form, in place of the conventional underframe of the Darnell patent was an obvious manner of providing an unobstructed space between the side edges of the patient-supporting surface and the floor while also affording an enclosure for the operating mechanism. It was unpatentable. 35 U.S.C.A. § 103. The contribution to the fund of public knowledge was insub-

1. The raising and lowering of the entire bed feature of Claim 5 was found antici-
pated in Darnell U.S. Patent No. 2,913,-300.

stantial and resulted from the application of mere mechanical skill. Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 328, 65 S.Ct. 647, 89 L.Ed. 973. It did not rise to the dignity of invention. And, commercial success without invention will not make patentability. Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162.

■ On the basis of the factual findings relating thereto, and which we find supported by the record, we agree with the District Court's conclusions that the claims in suit are invalid for lack of invention and anticipation in prior art disclosures. We therefore find it unnecessary to consider or discuss the defendant's contentions with respect to "exhausted combination" and "late claiming".

■ In view of the foregoing, we make no ruling as to infringement, because invalid claims cannot be infringed. Enterprise Railway Equipment Co. v. Keystone Railway Equipment Co., 7 Cir., 267 F.2d 102.

The judgment order of the District Court is affirmed.

Affirmed.