**NOVO INDUSTRIAL CORPORATION,**
Plaintiff-Appellant,

v.

**STANDARD SCREW COMPANY,**
Defendant-Appellee.

No. 15827.

United States Court of Appeals
Seventh Circuit.

Feb. 8, 1967.

Rehearing Denied April 11, 1967.

James B. Kinzer, Jr., Thomas F. McWilliams, Chicago, Ill., Wallace, Kinzer & Dorn, Chicago, Ill., for appellant.

Thomas A. Reynolds, Jr., Chicago, Ill., Robert F. Davis, John H. Lewis, Jr., Washington, D. C., Winston, Strawn, Smith & Patterson, Chicago, Ill., Stevens, Davis, Miller & Mosher, Washington, D. C., for appellee.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

CASTLE, Circuit Judge.

Novo Industrial Corporation, plaintiff-appellant, the owner of Lowther U. S. Patent No. 3,105,477, issued October 1, 1963, and relating to a crankcase ventilating system for internal combustion engines, brought this suit in the District Court against Standard Screw Company, defendant-appellee, charging infringement of the patent. The defendant denied infringement and asserted that the patent was invalid.

The District Court, following trial of the issues of validity and infringement, entered findings of fact, conclusions of law, and a judgment order adjudicating the patent in suit to be invalid and dismissing plaintiff's action. The court also found, concluded, and adjudged that the patent, if valid, is not infringed by the devices shown to have been manufactured and sold by the defendant. On the issue of validity the court concluded that the subject matter of each of the claims of the patent fails to meet the condition of nonobviousness imposed by 35 U.S.C.A. § 103 as a prerequisite to the existence of patentable invention.

The patent in suit pertains to a valve structure adapted to be interposed in a conduit interconnecting the crankcase and the air intake manifold of an internal combustion engine, such as an automobile motor. The valve is employed for the purpose of providing a controlled flow of ventilating air from the crankcase back to the intake manifold. The type of ventilating system in which the valve is incorporated provides a means by which the blow-by gases from the cylinders which leak past the piston rings and into the crankcase are returned through the air intake to the combustion chamber for re-burning rather than exhausted from a conventional crankcase draft tube into the atmosphere. Such a ventilating system is designed to prevent the unburned hydrocarbons present in the blow-by from polluting the atmosphere and contributing to the "smog" problem which in recent years has been encountered in some areas.

When such a ventilating system is employed it is essential to the efficient and proper functioning of the engine that the flow of ventilating air from the crankcase to the intake manifold be controlled by metering in order to adjust for variations in the pressure differential between the crankcase and the intake manifold due to changes in intake manifold vacuum which occur according to the speed at which the engine is operated. The purpose of the valve of the patent is to so meter the flow and thereby regulate the amount of blow-by the intake vacuum is permitted to suck up from the crankcase.

The valve structure of the patent in suit comprises a housing provided with a metering orifice, and an elongated solid metering pin of a varying diameter which floats on a compression spring and cooperates with the metering orifice of the housing. The compression spring nor-

mally biases the pin away from the orifice. The diameter of the orifice is greater than any cross-section diameter of the pin. The pin retracts or advances in the orifice in response to changes in the pressure differential between the crankcase and the intake manifold and thereby alters the effective area or amount of clearance available between the pin and the wall of the orifice for the passage of blow-by to the intake manifold.

In normal operation, the pin is suspended or floats on the spring with no seating or closing contact with the orifice. In event of backfire, the head of the pin (the end of the pin facing away from the orifice) seats on a shoulder formed by a reduction of the inner diameter of the housing and thereby effects a closing or sealing-off of the inlet from the crankcase. The pin is solid. It therefore is without passages likely to clog. The coils of the compression spring engage the inner walls of the housing to effect a self-cleaning action.

Defendant's accused valve structure has but one feature which serves to distinguish it from the patented structure and from the plaintiff's commercial device. In defendant's valve one of the coils of the compression spring is laterally offset relative to the other coils so that under load conditions (high engine speeds) the cant imparted to the metering pin by the form of the spring causes the pin to come in rubbing contact with the wall of the orifice for the purpose of preventing or dampening longitudinal oscillation of the pin.

The record discloses that since 1960 there has been increasing interest in the use of blow-by control devices on automobiles. In 1963 the State of California made it mandatory that new motor vehicles be equipped with a blow-by control device meeting prescribed emission and operating standards. In 1964 a similar requirement was extended to used vehicles. The State of New York also requires crankcase control devices, and in 1965 New Jersey was considering similar legislation.

The application for the patent in suit was filed on January 8, 1962. Crankcase ventilating systems incorporating the valve structure described and claimed in the application (and in the patent which later issued) were approved by California on June 19, 1962, for use as blow-by devices when factory-installed by the autobile manufacturer on new cars, and on June 5, 1963, for use on used cars.

Plaintiff and defendant are competing manufacturers of crankcase ventilating system valves. But defendant sells its valves only to automobile manufacturers for installation as original equipment. Defendant brought out its accused valve device in August of 1962, and its unit sales have been from four to five times greater than the plaintiff's. The plaintiff's sales are primarily in the replacement and used car after-markets.

The valve structure of the patent in suit is primarily directed to eliminating a plugging-up and "freezing-up" problem encountered in connection with the use of the type of valve which was first made commercially available for use in crankcase ventilating systems. This earlier type, known as the A C valve, was manufactured by the defendant and utilized the structure disclosed by McMullen U.S. Patent No. 2,716,398, issued August 30, 1955. This valve utilized a spring-loaded plunger which at low engine speeds, idling, and deceleration came into seating contact with the orifice to effect a closure during which the blow-by passed through a small passage in the plunger itself. Sludge from the crankcase which accumulated in the valve could plug the passage in the plunger or cause the plunger to stick in its seated position. Because of this, and of loss of the designed control characteristics or calibration due to distortion of the orifice seat caused by its repeated metal-to-metal contact with the plunger, periodic replacement of the valve was required to insure efficient engine operation and adequate blow-by control, and to safeguard against damage to the motor. A C recommended regular checking and maintenance every 4000 to 6000 miles.

Pertinent factual findings of the District Court may be summarized as follows:

Crankcase ventilating system valves which meter the withdrawal of crankcase vapors and the return of such vapors to the intake manifold of an engine are old in the art. A previous Lowther patent, U.S. Patent No. 2,359,485, issued in 1944 disclosed such a valve in which the metering pin is biased away from the orifice by weight rather than a spring, and it was obvious to anyone skilled in the art that such a valve could be biased by a spring instead of a weight if so desired so the valve could operate in an attitude other than vertical. McKiney U.S. Patent No. 3,017,871 discloses the substitution of a spring as an alternative to the weighting of the metering pin in a valve controlling the flow of fuel additives to the intake manifold of a combustion engine. Metering valves such as Sciore U.S. Patent No. 2,988,346, Francis U.S. Patent No. 780,986, McMullen U.S. Patent No. 2,716,398, and Cowgill U.S. Patent No. 3,077,762 show metering valves in which the metering pin is biased away from the metering orifice by a spring; that the metering pins in Sciore and Francis are elongated, solid tapered pins biased away from the orifice, in each case, by a spring and never necessarily contacting the orifice or any portion of the valve housing. The flow of fluid in each case tends, as it does in the patent in suit, to press against the pin and spring and move the pin into the orifice so as to resist increased flow. The valve structure of the patent in suit in essence comprises an elongated solid metering pin of a varying diameter, which floats on a compression spring and cooperates with a metering orifice in a housing, but it never necessarily contacts the orifice or any portion of the housing. The spring normally biases the pin away from the orifice. Defendant's engineers evolved and produced the defendant's accused valve structure independently of any knowledge of the specific construction of the valve of the patent in suit.

It is pertinent to observe that the trial court heard the testimony of expert witnesses with respect to the elements, operational functions and characteristics of the patent in suit, and the scope and content of prior art disclosures, considered from the standpoint of whether the construction of the patent would have been obvious to one skilled in the art at the time of the making of the claimed invention. Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S.C.A.) therefore applies to our review of the court's factual findings relating to such matters. Aerosol Research Company v. Scovill Manufacturing Co., 7 Cir., 334 F.2d 751, 753. And our examination and appraisal of the record on the basis of the opposing contentions advanced on appeal by the parties convinces us that there is substantial evidentiary support which precludes us from rejecting any of the critical factual findings relevant to the issue of lack of invention for "obviousness" as being clearly erroneous.

Inasmuch as neither the Sciore patent nor the Francis patent was before the Patent Office, the statutory presumption of validity attaching to the issuance of a patent is of no aid to the plaintiff. A R Inc. v. Electro-Voice, Incorporated, 7 Cir., 311 F.2d 508, 512; Hobbs v. Wisconsin Power & Light Company, 7 Cir., 250 F.2d 100.

Plaintiff relies heavily upon argument addressed to the factors of commercial success and the failure of others to remedy the shortcomings or solve the problems of the A C valve, which was the device in commercial use preceding the development of the structure of the patent in suit. It urges that these factors require a conclusion that the then existing level of ordinary skill in the art was at a stage which compels a determination of the issue of obviousness in favor of the validity of the patent in suit. We are not persuaded by this argument. On the record before us, such contention affords no basis for a rejection of the conclusion to the contrary dictated by factual findings which are substantially supported by expert testimony. We think it apparent

that the advent of legislation requiring the use of effective blow-by control devices on automobiles served to create an expanded market for the valve used in crankcase ventilating systems and spurred those skilled in the art to address themselves to the elimination of the features which were causing dissatisfaction with the performance of the A C valve. The development of the valve of the patent in suit, and the independent and almost contemporaneous development and introduction of the defendant's accused valve structure which followed, in our judgment warrant the conclusion that the structure of the patent in suit was but the result of application of ordinary skill in the art to a problem which for the first time was beginning to assume significant commercial importance to the automotive industry.

■ Moreover, commercial success, unsolved needs, failure of others, etc., are but secondary considerations which, although they may have some relevancy as indicia of obviousness or nonobviousness, and may serve to guard against slipping into hindsight, do not on a record such as that before us tip the scales in favor of patentability. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L. Ed.2d 545.

■■ We perceive no basis for disturbing the District Court's conclusion and adjudication that Lowther U.S. Patent No. 3,105,477 is invalid. And, in view of this, we deem it unnecessary to consider the contentions made concerning the court's resolution of the issue of infringement. There can be no infringement of an invalid patent. Toro Manufacturing Corporation v. Jacobsen Manufacturing Company, 7 Cir., 357 F.2d 901, 904; Simmons Co. v. Hill-Rom Company, 7 Cir., 352 F.2d 886; Enterprise Railway Equipment Co. v. Keystone Railway Equipment Co., 7 Cir., 267 F.2d 102.

The judgment order of the District Court is therefore affirmed.

Affirmed.