**APPLETON ELECTRIC COMPANY,**
**Plaintiff-Appellant,**

**v.**

**EFENGEE ELECTRICAL SUPPLY COMPANY, Defendant-Appellee.**

**No. 17304.**

United States Court of Appeals
Seventh Circuit.

June 23, 1969.

Howard H. Darbo, E. C. Vandenburgh, Darbo, Robertson & Vandenburgh, Arlington Heights, Ill., for plaintiff-appellant; Jon L. Liljequist, Chicago, Ill., of counsel.

George N. Hibben, Arlie O. Boswell, Jr., Chicago, Ill., Herbert A. Huebner, Huebner & Worrel, Los Angeles, Cal., Hibben, Noyes & Bicknell, Chicago, Ill., for defendant Efengee Electrical Supply Co.

Before CASTLE, Chief Judge, FAIRCHILD, Circuit Judge, and BEAMER, District Judge.

CASTLE, Chief Judge.

Plaintiff instituted this action in the district court charging defendant with infringement of plaintiff's Appleton United States patent number 2,917,263. Defendant filed an answer and a motion for summary judgment, alleging that the relevant claims 3 and 5 of the above patent, which were charged by plaintiff to have been infringed, were invalid. Plaintiff opposed defendant's motion and filed its own motion for summary judgment. The district Court granted defendant's motion and denied plaintiff's, the latter of whom brought this appeal.

Patent 2,917,263 covers a "bar hanger" for supporting electrical outlet boxes. The device consists of an extensible tubular sheet-metal bar with a hanger stud suspended therefrom which is employed for holding electrical outlet boxes or fixtures, such as an overhead light fixture. On each end of the bar is a sheet metal flange, designed to be attached to a wooden building member, such as a floor joist or wall stud. Thus, with each flange attached to parallel studs or members, supporting the extensible bar, an electrical outlet may be attached to the hanger stud for support.

The relevant claims, 3 and 5, of the patent concern a pair of metal prongs, each of which is an integral part of each flange and which, when struck by a hammer after positioning the flange, temporarily secures the flange to the wooden member until permanently affixed thereto by means of screws or nails. The claims describe the prongs as "L-shaped" (claim 5), being stamped out of the flange so that there is a rectangular vertical opening, the top of which forms the "hinge" of the prong, with a "shank" portion extending downward and a sharp "toe" portion pointing inward from the shank. The length of the shank portion of the prong is claimed to be "about equal" to the distance between the hinge point and the initial point of entry of the toe into the support, enabling the prong, it is claimed, to be driven into the support without "tending to shift it [the flange] from the original placement on the support."

The claimed novelty of the prong resides in this ability to position the bar hanger between two building members and temporarily secure the hanger, without moving it, by hammering the two prongs into the members. Although plaintiff alleges that its patent provided for a prong which formed an isosceles triangle with "equal" sides (the "toe" portion being the base), the patent, as noted above, provides only for sides which are "about equal."

The district court held that plaintiff's patent was obvious under 35 U.S.C. § 103,[1] and therefore invalid. This find-

---

[1] "§ 103. Conditions for patentability; non-obvious subject matter.

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the sub-

ing was based on the prior art in the industry, especially that which was described in certain patents in the electrical outlet box support field. Included in this prior art, and relied upon by the district court, were the Dedge [2] and Goldner [3] patents, each of which illustrated prongs similar to the plaintiff's.[4]

Although these patents did not make any claim regarding the length of the sides of the triangle formed by the prongs, and the angles formed between the shank and toe portions of the prongs appear to be right angles, the diagrams accompanying the Dedge and Goldner patents illustrate prongs which have the approximate dimensions claimed by plaintiff's patent, which itself described sides being merely "about equal." Moreover, the prongs in the Dedge and Goldner patents were designed for the same use as those in plaintiff's patent, and while no claim was specifically made that the brackets would not tend to shift position when the prongs were hammered into the supports, the prongs were claimed to "prevent displacement" of the bracket (Goldner) or "make * * it stationary" (Dedge) when hammered in.

The district court concluded:

"Applied to the instant patent, section 103 prevented plaintiff's patent number 2,917,263 from being valid. In light of the prior art, construction of a prong which does not jostle the bar hanger while being driven into the support was obvious to anyone with ordinary skill in the art. See

Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); Gass v. Montgomery Ward & Co., 387 F.2d 129, 132 (7th Cir.1967). Moreover, it would also have been apparent to anyone familiar with the rudimentary principles of plane geometry which may be acquired in junior high school. Appleton merely observed that the bar hanger would not move so long as the prong pivoted around the hinge point, rather than entering the support at an oblique angle."

We agree with the conclusion reached by the district court and accordingly affirm the decision.

In Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the Supreme Court construed § 103 of the Patent Act, 35 U.S.C. § 103, and set out the standards for determining the presence or absence of obviousness. After a scholarly analysis of the history of patent legislation and judicial interpretation thereof, Justice Clark, speaking for a unanimous Court, noted that § 103 was relatively unambiguous and that its test of "nonobviousness" was more definite than the "invention" language of Hotchkiss v. Greenwood, 11 How. 248 (1851), which had until then been the principal judicial authority on patentability. The Court, 383 U.S. at 14–15, 86 S.Ct. at 692, quoted with approval the following language from the Congressional Report on § 103:

"An invention which has been made, and which is new in the sense that the same thing has not been made before,

ject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

2. U. S. Patent No. 2,423,757.

3. U. S. Patent No. 1,386,468.

4. Since neither the Goldner nor the Dedge patent was cited by the Patent Office in issuing plaintiff's patent, the statutory presumption of validity attaching to the issuance of a patent is of no

aid to the plaintiff. Novo Industrial Corp. v. Standard Screw Co., 374 F.2d 824, 827 (7th Cir. 1967); Simmons Co. v. Hill-Rom Co., 352 F.2d 886, 888 (7th Cir. 1965). We reject plaintiff's contention that the Dedge and Goldner patents were no more pertinent than the prior art patents cited by the Patent Office. Upon examination, we find that the integral prongs illustrated in the Dedge and Goldner patents are much more similar to plaintiff's prongs than are the prongs contained in any of the prior art patents cited by the Patent Office.

may still not be patentable if the difference between the new thing and what was known before is not considered sufficiently great to warrant a patent. That has been expressed in a large variety of ways in decisions of the courts and in writings. Section 103 states this requirement in the title. It refers to the difference between the subject matter sought to be patented and the prior art, meaning what was known before as described in section 102. If this difference is such that the subject matter as a whole would have been obvious at the time to a person skilled in the art, then the subject matter cannot be patented." [5]

The Court then stated the procedure to be used in determining whether or not a particular article is obvious:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc. might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy." 383 U.S. at 17–18, 86 S.Ct. at 694.

This Court recently noted that under *Graham*, "the ultimate question is whether a hypothetical person having ordinary skill in the art would have readily found the same solution when addressing himself to the same problem." Gass v. Montgomery Ward & Co., 387 F.2d 129, 130 (7th Cir.1967).

We hold that the district court in the instant case correctly applied the standards set out in *Graham*. The scope and content of the prior art disclosed that previous patents contained fastening prongs quite similar to those claimed by plaintiff's patent. Plaintiff contends that the difference between the acute angle formed by the shank and the toe portions of its prong and the right angle in the Dedge and Goldner prior art prongs was sufficient to render its prong patentable. Thus, plaintiff argues, the triangle formed by the prior art prongs cannot be isosceles since the hypotenuse of a right triangle must always be greater than either of the other sides, and it is the "about equal" lengths of the two sides of the triangle in its patent which allows the prong to be hammered in without jostling the bar hanger.

However, a person having ordinary skill in the art would have immediately seen that, by reducing the angle formed between the shank and the toe of the prong by a few degrees, the desired result would be achieved. The solution to the problem—the subject matter of plaintiff's patent—was therefore obvious and invalid.

We do not reach this conclusion by hindsight, nor do we base it on the fact that the art was crowded [6] or that the invention was simple [7] and applied known principles. The conclusion of obviousness is compelled by evaluating the prior art and the difference between the plaintiff's patent and the prior art which existed at the time the invention was made. See Walt Disney Productions v. Fred A. Niles Communications Center, 369 F.2d 230, 234 (7th Cir. 1966). In our opinion, anyone "having ordinary skill in the art would have readily found the same solution when addressing himself to the same problem."

5. Sen.Rep. No. 1979, 82d Cong., 2d Sess. 6 (1952); H.R.Rep. No. 1923, 82d Cong., 2d Sess. 7 (1952).

6. See Universal Oil Products Co. v. Globe Oil & Refining Co., 137 F.2d 3, 7 (7 Cir. 1943).

7. See AMP Inc. v. Vaco Products Co., 280 F.2d 518, 520 (7th Cir. 1960).

Gass v. Montgomery Ward & Co., 387 F.2d 129, 130 (7th Cir.1967); see also Formal Fashions, Inc. v. Braiman Bows, Inc., 369 F.2d 536, 538 (2d Cir.1966).

Moreover, we find plaintiff's contention that defendant admitted that plaintiff's prong was nonobvious, by changing the dimensions on its own prong, to be unsupported by the record and without merit.

Thus, plaintiff's patent was obvious and invalid, and since there can be no infringement of an invalid patent,[8] the district court was correct in granting defendant's and denying plaintiff's motion for summary judgment. The judgment below is, therefore, affirmed.

Affirmed.

8. Novo Industrial Corp. v. Standard Screw Co., 374 F.2d 824, 828 (7th Cir. 1967); Toro Manufacturing Corp. v. Jacobsen Manufacturing Co., 357 F.2d 901, 904 (7th Cir. 1966); Simmons Co. v. Hill-Rom Co., 352 F.2d 886, 889 (7th Cir. 1965).