**David L. GASS and Gem Manufacturing Company, Plaintiffs,**

v.

**MONTGOMERY WARD & CO., Defendant.**

**David L. GASS and Gem Manufacturing Company, Plaintiffs,**

v.

**SUPERIOR INDUSTRIES, INC., and Sears Roebuck and Co., Defendants.**

Nos. 64 C 1996, 65 C 205.

United States District Court
N. D. Illinois, E. D.
Sept. 14, 1966.

James R. McKnight, Chicago, Ill., for plaintiffs.

Max Kraus, Prangley, Baird, Clayton, Miller & Vogel, Chicago, Ill., Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., for defendants.

## OPINION

WILL, District Judge.

Plaintiffs charge defendants with infringing United States Patent No. 3,121,-582, issued February 18, 1964 to plaintiff David L. Gass (hereinafter "Gass"), who has granted an exclusive license to plaintiff Gem Manufacturing Company (hereinafter "Gem"). The defendants concede that the accused devices embody the structure described in claims 1 and 2 of the patent in question but assert that such claims are invalid. Plaintiffs in turn acknowledge that if such claims are invalid the remaining claims and the patent are likewise.

As is well known, automobile bumpers are mounted at different heights on automobile bodies with the result that when cars whose bumpers are at different heights from the road come into contact, damage may be caused by over ride or under ride. Protection against this is provided by bumper guards. Because different makes and models of automobiles have bumpers of different contours, it has been necessary to design and manufacture custom bumper guards made in different shapes and forms for the different contours of the bumpers on the various makes and models of cars.

While this has presented no serious problem to automobile dealers who customarily sell only one or two makes of automobiles, retail auto accessory stores and merchandisers like defendants Montgomery Ward & Co. (hereinafter "Wards") and Sears Roebuck and Co. (hereinafter "Sears") who sell to owners of all makes and models of cars, have faced the undesirable alternative of either stocking many different custom bumper guards or being unable to satisfy the demands of their customers. Obviously, a universal bumper guard which would fit the bumpers of many different makes and models of automobiles would be a happy solution to this problem.

Gass, who had been employed by Gem since 1951 to create new items, undertook to develop such a universal guard. Between 1960 and 1962, he produced three different models, none of which was a satisfactory solution to the problem. In 1962, he combined a modification of the rubber bayonet or bullet type bumper guard originally used on Cadillac cars and a modification of the vertical or stanchion type guard widely used for many years. He flared the edges of the vertical guard and mounted the latter on to the former and the bumper by the use of a bolt running from the vertical guard, through the modified rubber bullet and the bumper. The entire unit is held tightly to the bumper by the use of a washer and nut.

The flared edges on the vertical guard permit pressure from the tightening of the nut to be transferred to the modified rubber bayonet or bullet base without cutting into it. When such pressure is applied, the concave or recessed back portion of the rubber base conforms to the contours of the variously curved bumpers while at the same time holding the entire assembly tightly against the bumper.

While this unit does not fit every bumper, it fits substantially all of those on recent models of cars manufactured in the United States and has accordingly been commercially successful both for plaintiffs and defendants.

■ As previously indicated, the sole issue here involved is the validity of Gass' Patent No. 3,121,582. A patent is presumed valid and the burden of establishing its invalidity rests on the party challenging it. Defendants contend that Brunner patent No. 2,291,370 discloses sufficient elements of the patent in suit so that one skilled in the art could readily have devised the design of the Gass unit.

An examination of Brunner issued in 1942 reveals that it includes a vertical or stanchion bumper guard with the traditional inwardly curved or concave aperture on its rear side and employing a beaded rubber adaptor which fits between the guard and bumper both to absorb some of the shock of impact and accommodate some variations in the contour of the bumper. It is apparent, however, that the adaptor in Brunner and the modified bullet base of Gass' patent are substantially different. The former is essentially a gasket or washer which fills the aperture between two fixed surfaces and in so doing conforms to relatively minor variations in the contours of the two surfaces. In Gass, the rubber base is itself a substantial body which while it fills the space between the guard and bumper and conforms to the shape of the latter, also has sufficient body and strength so that it serves as an independent base or support of the guard. In addition, it will adapt to a substantially greater variety of contours, as well as much sharper curvatures than the adaptor in Brunner.

Defendants assert that given the disclosures in Brunner and the well-known bayonet or bullet type guard, a person skilled in the art would be able to produce the Gass guard. Events belie this assertion. Gass, who had been employed since 1951 by Gem, worked for three years on a variety of designs before he conceived the idea of combining the two types of guards which had previously been utilized separately and independently. Then he had to modify each before he produced a useable device. Shortly after the Gass unit appeared on the market, Sears and Wards sought to have their suppliers copy it and defendant Superior, which had not previously manufactured bumper guards, concedes that it copied the Gass unit.

■ While it is well established that a combination of previously known elements does not constitute invention, it is equally well established that a combination of elements not previously utilized together to produce a new result is invention. Gass has taken the bullet or bayonet type guard and utilized it, not as a bumper guard but as a base on which the modified vertical or stanchion type guard is mounted. This ingenuity achieved for the first time a universal guard for modern car bumpers with their varying contours. Nothing in the prior art or practice suggested this combination of elements which had previously been used separately and alternatively. Accordingly, we conclude that the Gass unit discloses invention and his patent No. 3,121,582 is valid.

Defendants have asserted that the only contribution Gass has made to the automotive art is the flaring of the edges of the vertical guard and that the Court recognized this in observing during the trial that if defendants would make their guards without the flare, the patent would not be infringed. As previously indicated herein, it is not the Court's opinion that this is all Gass contributed to the art nor was the Court observation intended so to suggest. The patent in question is a combination patent and it is well established that a combination which omits one of the elements specified in such a patent does not infringe. The Court's observation was simply an application of this principle to the patent and devices in suit and not, as counsel for the defendants have mistakenly concluded, a value judgment as to the scope of Gass' invention and contribution to the automotive art.

■ We conclude then that the Gass patent No. 3,121,582, issued on February 18, 1964, is valid. It is conceded by defendants that, if the patent is valid,

the accused devices infringe. Plaintiffs are therefore entitled to judgments for money damages and injunctions against further infringement. The counterclaims seeking a declaration of invalidity are dismissed. Appropriate orders will enter.

### FINDINGS OF FACT and CONCLUSIONS OF LAW

The Court, having examined the pleadings in these causes which were consolidated for trial pursuant to agreement of the parties, and considered the evidence and the arguments of counsel, makes the following Findings of Fact and Conclusions of Law.

1. The complaints in these actions allege patent infringement of U. S. Patent No. 3,121,582 issued on February 18, 1964 to plaintiff David L. Gass on Universal Bumperette Assembly. Defendants' counterclaim asks for a declaratory judgment that said patent is invalid.

2. Plaintiff David L. Gass is a Chicago resident, and plaintiff Gem Manufacturing Company is an Illinois corporation with its only and principal place of business in Chicago, Illinois.

3. Defendant Montgomery Ward & Co. is an Illinois corporation, defendant Superior Industries, Inc., is a California corporation, and defendant Sears Roebuck & Co. is a New York corporation, and all of said defendants have regular and established places of business in Chicago, Illinois, where they have sold the allegedly infringing devices.

4. Plaintiff David L. Gass is now, and has always been, the owner of United States Letter Patent No. 3,121,582, issued to him on February 18, 1964 for Universal Bumperette Assembly, and plaintiff Gem Manufacturing Company is his exclusive licensee to make and sell devices made in accordance with said patent.

5. A copy of the patent in suit, No. 3,121,582, is in evidence as Plaintiffs' Exhibit 8. Plaintiffs' commercial bumper guards, made in accordance with said patent, are in evidence as Plaintiffs' Exhibit 12, Defendants' Exhibit N, and as shown in Plaintiffs' Exhibits 14, 15 and 27.

6. Prior to the filing of the complaint in this case, plaintiffs' attorney sent an infringement notice to Allstar Automotive Corp. and its counsel, as shown in Plaintiffs' Exhibits 16 and 17, to Sears Roebuck and Co., as shown in Plaintiffs' Exhibit 18, and to Montgomery Ward & Co., as shown in Plaintiffs' Exhibit 19.

7. Plaintiffs allege that the patent in suit is infringed by the bumper guards made by Allstar Automotive Corp. and sold by defendant Montgomery Ward & Co., as shown in physical exhibits, Plaintiffs' Exhibits 2 and 3, and bumper guards made by defendant Superior Industries, Inc. and sold by Montgomery Ward & Co., as shown in Plaintiffs' Exhibit 5 and sold by defendant Sears Roebuck and Co. as shown in Plaintiffs' Exhibit 6. Montgomery Ward & Co. has sold approximately 702 sets of bumper guards as shown in Plaintiffs' Exhibits 1, 2 and 3, and 1620 sets of bumper guards as shown in Plaintiffs' Exhibits 4 and 5. Sears Roebuck and Co. has sold 4946 bumper guards as shown in Plaintiffs' Exhibits 6, 7 and 8. Defendant Superior Industries, Inc. first learned of plaintiff's patent in suit, No. 3,121,582, in February 1964, and first sold bumper guards like Plaintiffs' Exhibits 5 and 6 in May 1964, and had not sold bumper guards of any kind prior to that time. Defendant, Superior Industries, Inc., has sold 20,019 bumper guards made in accordance with plaintiff's Patent No. 3,-121,582, at an aggregate selling price of $85,940.

8. Plaintiff Gem Manufacturing Company has sold in excess of 77,000 of its patented Universal Bumperette Assemblies, as shown in Plaintiffs' Exhibit 12, totaling over $295,000, and this product has enjoyed commercial success.

9. Defendants stipulate Claims 1 and 2 are infringed if valid.

10. Plaintiffs stipulate that if Claims 1 and 2 are invalid, the remaining Claims 3 through 7 are invalid.

11. Plaintiff's Patent No. 3,121,582 provided for the first time, a universal bumperette assembly for attachment to the bumper of an automobile, consisting of a bumperette, an adaptor of hard resilient material, and securing means, the adaptor having at its back portion a single curved or recessed part conforming to the general shape of the bumper, the adaptor also having a rounded front portion and the bumperette having a flared body portion contiguous with and engaging the rounded front portion so that when the securing means was tightened, the adaptor would shift or flow to engage the bumper to prevent movement of the adaptor, and so that the bumperette was held tightly in fixed relationship against the adaptor.

12. The result of the assembly described in Finding 11 is to provide a bumper guard assembly which may be used with varying contoured bumpers to protect a car against over ride and under ride.

13. In and prior to 1962, there was a need for a universal bumper guard which could be readily attached to fit the various curved bumpers of automobiles and which when attached would remain in fixed rigid position to protect against over ride and under ride in modern day traffic.

14. Plaintiff David L. Gass sought for several years to solve this problem. His experimental work produced devices in evidence as Plaintiffs' Exhibits 9, 10 and 11, which were not satisfactory. Finally, he solved the problem by the creation and product of the Universal Bumperette Assembly shown in his Patent No. 3,121,582.

15. Although the need persisted for a universal bumperette assembly, no such product was offered on the market or appeared in any patent issued by the United States Patent Office prior to November 20, 1962, the date of filing of the application which matured into plaintiffs' Patent No. 3,121,582.

16. Plaintiff Gem Manufacturing Company introduced its patented Universal Bumperette Assembly to the trade and purchasing public in January 1963, at which time there was no competing product on the market.

17. Plaintiffs' patented Universal Bumperette Assembly filled a long felt need in the automotive bumper guard field.

18. Plaintiffs' patented Universal Bumperette Assembly was immediately accepted by the purchasing public and attracted the attention of the trade, including the defendants.

19. After plaintiffs' patented bumper guards had been on the market, Allstar Automotive Corp. came out with copies of the same, and sold them through defendant Montgomery Ward & Co., as shown in Plaintiffs' Exhibits 2 and 3.

20. More than a year after plaintiff first sold its patented bumper guards in 1963, defendant Superior Industries, Inc. came out with copies of the same and sold them particularly through defendant Montgomery Ward & Co., as shown in Plaintiffs' Exhibit 5, and through defendant Sears Roebuck and Co., as shown in Plaintiffs' Exhibit 6.

21. At the trial defendants confined their testimony on the prior art to the Brunner Patent No. 2,291,370, and to plaintiffs' Bullet Bumper Guards, as shown in Plaintiff's Exhibit 10.

22. The Brunner Patent No. 2,291,370 does not show a bumperette having a flared body portion, or an adaptor having a rounded front portion, or the flared body portion contiguous with and engaging the rounded front portion so that when the securing means is tightened that the bumperette is held tightly in fixed relationship against said adaptor.

23. The Brunner Patent No. 2,291,370 shows a thin gasket or washer which lies flat against notches 5 of the collision guard 2, and flat against bumper 1, and straight wall 11, without any flared portions.

24. The Brunner Patent No. 2,291,370 does not show, teach or suggest the

structure, function, operation or result of plaintiff's Patent No. 3,121,582.

25. Plaintiffs' Bullet Bumper Guard, as shown in Plaintiffs' Exhibit 10, does not have a bumperette with a flared body portion, or teach the positioning of any flared body portion contiguous with and against a rounded front portion of an adaptor so that when the securing means is tightened the bumperette is held tightly in fixed position against said adaptor to maintain the bumperette in rigid position.

26. Neither the Brunner Patent No. 2,291,370, nor plaintiffs' Bullet Bumper Guard, Plaintiffs' Exhibit 10, shows the construction of plaintiffs' Universal Bumperette Assembly of Patent No. 3,121,582.

27. None of the prior art patents set forth in defendants' exhibits discloses the structure in plaintiff's Patent No. 3,121,582.

28. David L. Gass testified that during the prosecution of the application which resulted in Patent No. 3,121,582, that he and his attorney had an oral interview with the Examiner in the United States Patent Office and at that time discussed the Brunner Patent No. 2,-291,370, the Fageol Patent No. 2,243,462, and plaintiffs' Bullet Bumper Guard, but this art was considered so remote that it was not even added to the record of citations.

29. When defendant Superior Industries, Inc. came on the market with its infringing bumper guards, it had known of plaintiff's patent. This was the first time that Superior Industries, Inc. had ever sold bumper guards, and the infringing bumper guards are the only bumper guards that Superior Industries, Inc. has ever sold.

30. All of said defendants sold infringing bumper guards admittedly infringing plaintiff's Patent No. 3,121,582, after notice of the same and have continued to sell the same.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject matter and the parties in this case under the patent laws of the United States, 28 U.S.C. §§ 1333(a) and 1400.

2. Plaintiffs' patent No. 3,121,582 is valid in disclosing the new, original and non-obvious combination of a bumperette, a rounded adaptor and securing means providing a universal bumperette assembly for attaching to fit the varying curved bumpers of current automobiles and for remaining in fixed rigid position to withstand the bumps of modern day traffic.

3. Claims 1 through 7 of plaintiffs' Patent No. 3,121,582 are valid.

4. Defendants have admitted that the universal bumperette assemblies shown or advertised in Plaintiffs' Exhibits 1 through 7 infringe claims 1 and 2 of plaintiffs' Patent No. 3,121,582.

5. The Brunner Patent No. 2,291,370 urged by the defendants, does not show nor anticipate the invention in plaintiffs' Patent No. 3,121,582, because it shows a flat piece of rubber fitted within the notches 5 of walls 11 of collision guard 2, and lying against bumper bar 1, and does not show a bumperette having a flared body portion, an adaptor having a rounded front portion and a back portion having a curved part conforming to the general shape of a bumper, with the flared body portion contiguous with and engaging the rounded front portion so that when the securing means is tightened the adaptor is shifted to engage the bumper to prevent movement of the adaptor and so that the bumperette is held tightly in fixed relationship against said adaptor.

6. The Bullet Bumper Guard, as shown in Plaintiffs' Exhibit 10, does not show nor anticipate the invention in plaintiffs' Patent No. 3,121,582 because the Bullet Bumper Guard does not show nor teach a bumperette having a flared body portion contiguous with and engaging the rounded front portion of an adaptor so that when the securing means is tightened the adaptor is shifted to engage the bumper to prevent movement of the adaptor and so that the bumperette is held tightly in fixed relationship against said adaptor.

7. None of the other prior art pleaded by defendants (but not mentioned in the testimony at the trial), anticipates or teaches the invention of plaintiffs' Patent No. 3,121,582.

8. Plaintiffs are entitled to:

(a) an injunction against each of said defendants, its respective officers, directors, agents, servants, employees, and those in active concert or participation with it, restraining each of them from making, using, offering for sale, or selling universal bumperette assemblies or bumper guards constructed in accordance with or infringing plaintiffs' Patent No. 3,121,582.

(b) for an accounting by each of said defendants to plaintiffs for the manufacture, sale and/or use by it of infringing universal bumperette assemblies, and to pay over to plaintiffs such gains, profits and advantages as would have accrued to plaintiffs but for the unlawful doings of said defendants, and all damages plaintiffs may have suffered or sustained thereby.

(c) that defendants pay to plaintiffs full taxable costs.

(d) that defendants' counterclaims be and the same are hereby dismissed.