David L. GASS and Gem Mfg. Co.,
Plaintiffs-Counter-Defendants-
Appellees,

v.

MONTGOMERY WARD & CO., and Superior Industries, Inc., et al., Defendants-Counter-Plaintiffs-Appellants.

No. 15991.

United States Court of Appeals
Seventh Circuit.

Sept. 14, 1967.

Rehearing Denied Nov. 8, 1967.

Max R. Kraus, Chicago, Ill., Francis A. Utecht, Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., for appellants.

James R. McKnight, Chicago, Ill., for appellees.

Before KNOCH, CASTLE, and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Actions for infringement of a patent.[1] Defendants challenged validity, but admitted infringement if the patent be valid. The district court gave judgment for plaintiffs, deeming the patent valid. Defendants appealed.

The issue is obviousness, i. e., whether the differences between the subject matter sought to be patented and the prior art were such that the subject matter as a whole would have been obvious to a person having ordinary skill in the art. 35 U.S.C. § 103.

The analytical steps which a court must take in determining the issue of validity under sec. 103 (obviousness) have been clearly described:

"*  *  *  Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.

1. No 3,121,582, Universal Bumperette Assembly, issued Feb. 18, 1964 to plaintiff David L. Gass. Plaintiff Gem Manufacturing Company, employer of Gass, is licensee.

Against this background, the obviousness or nonobviousness of the subject matter is determined. * * * "[2]

■■ The district court did not spell out in its opinion, findings, and conclusions the steps above prescribed. The court did, in its conclusions, characterize the subject matter as a "new, original and non-obvious combination." It apparently based the conclusion of non-obviousness upon findings that the product made by Gem under its license attained a degree of commercial success and filled a long felt but unsolved need, and that Gass had sought to solve the problem for several years before succeeding. Although these three matters are relevant, they are not conclusive. The first two have been referred to as "secondary considerations" which may have relevancy.[3] The difficulty experienced by a particular individual is not conclusive because the ultimate question is whether a hypothetical person having ordinary skill in the art would have readily found the same solution when addressing himself to the same problem.[4]

Although we have indicated that in cases where the trial court has not applied the *Graham* technique in determining the issue of obviousness, it is generally sounder procedure to remand the issue for trial court determination,[5] we consider the present record makes it sufficiently clear that the subject matter was obvious to make the determination here.

1. *The problem solved by plaintiff's product.* Automobile owners desire to buy bumper guards which can be fastened to bumpers and will prevent them from riding over or under the bumper of another car on impact in minor collisions. There is great variation in the vertical profiles of bumpers on current model automobiles, and a bumper guard tailored to the bumper of one make or model will not fit others. If a type of universal bumper guard were available, capable of fitting most bumpers, a retailer of automobile accessories would likely stock those, rather than a greater variety of bumper guards fitting only particular makes or models.

2. *Plaintiffs' solution.* The bumper guard manufactured by Gem and copied by defendants will fit the bumpers of many makes and models. A familiar type of vertical bumper guard, extending above and below the bumper, is arranged so that it can be fastened to the bumper by a bolt, running from the guard through a hole in the bumper. Between the guard and the bumper, the bolt passes through an "adapter" of hard resilient material, such as hard rubber. The face of the adapter which meets the surface of the bumper is curved to conform only approximately to the profiles of bumpers, generally, but when the guard is drawn tight to the bumper, the adapter conforms to the bumper surface.

Claim 1 of the patent is representative, for this purpose. It reads:

"1. A universal bumperette assembly for attachment to the bumpers of automobiles and for adjustably fitting said bumperette assembly to varying curved bumpers comprising an adaptor formed of hard resilient material having a rounded front portion having a single curved part conforming to the general shape of a bumper to seat and engage the bumper throughout the single curved part of the adaptor, a bumperette having a flared body portion, the surface of which is contiguous with and engages the rounded front portion of said adaptor, securing means attached at one end to said bumperette and extending through the opening in said adaptor whereby said bumperette assembly is adapted to be attached to the bumper of an automobile having a hole there through with the curved back part of said adaptor

---

2. Graham v. John Deere Co. (1966), 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545.

3. *Graham*, supra, 383 U.S. p. 18, 86 S.Ct. 684.

4. Formal Fashions, Inc. v. Braiman Bows, Inc. (2d Cir. 1966), 369 F.2d 536.

5. Cloud v. Standard Packaging Corp. (7th Cir. 1967), 376 F.2d 384, 391.

positionable contiguous with the bumper and said securing means extendable through the hole in the bumper, and adapted to be tightened so that said adaptor is shifted to engage the bumper so as to prevent movement of the adaptor and so that said bumperette is held tightly in fixed relationship against said adaptor."

3. *The prior art.* Seven patents were cited as references. Defendants rely more particularly on a patent not cited and an unpatented bullet bumper guard developed by Gass and on sale and in public use for more than one year before application for the instant patent.

One of the cited patents was No. 2,214,-514, issued Sept. 10, 1940 to Mercer D. Walklet, "Automobile Bumper Construction." The application contained the following statement:

"It is the purpose of the invention to provide a simple and very effective combination of guard and adapter which will fit the standard bumper guard and will be yielding or elastic so that it will conform to the contour of a wide range of different bumper contours. In the form of the invention shown the adapter is made of a yielding material * * * to contact and shape itself to the bumper as the securing means is drawn up."

The patent not cited was No. 2,291,370, issued July 28, 1942 to David John Brunner, Jr., "Collision Guard Means for Vehicles." In the description of an embodiment of the invention, the following appears:

"In place of the above described composite construction, the adapter may be made entirely of pliable or resilient material, such as that above mentioned. The adapter is shown so constructed in Fig. 9, where it is designated 10b.

"The advantages of constructing the adapter in whole or in part of a pliable or resilient material are that it will absorb some of the shock of impact in case of collision; will reduce or eliminate squeaking or rattling, and it can be compressed so as to conform

to and therefore properly fit bumper bars of somewhat different contour, thus reducing the number of adapters that would have to be carried in stock in order to fit the guards to a given number of different style bumper bars."

Although both patents disclose an arrangement of vertical bumper guard, resilient adapter, and bumper generally similar to the arrangement in the Gass patent, it should be observed that the profiles of bumpers in the early '40's did not have curves or angles as accentuated as present day bumpers, and the resilient adapters were not as substantial, molded bodies as the adapters pictured in the Gass patent and used in the present Gem products.

The prior unpatented bullet bumper guard developed by Gass consisted of a steel tip or body "mounted in durable impact absorbing rubber." The device is attached to a bumper by a bolt running from the steel tip through the rubber mounting and through the bumper. The rubber mounting performs a similar function to that of the adapter in the patented device, except that the steel tip of the bullet guard does not afford any protection against under or overriding. The mold for the rubber mounting was later used by Gem to make the bullet shaped adapter for one line of guard under the Gass patent.

Vertical bumper guards were well known. The Walklet and Brunner patents disclosed the idea of a resilient adapter between the vertical guard and the bumper capable of conforming to varying profiles, so that one guard could fit different makes and models of automobiles. The bullet guard showed the type and shape of thick rubber adapters which, when the nut was tightened, would draw up and conform to the more exaggerated profiles of today's bumpers.

4. *Differences between the prior art and the claims at issue:*

The subject matter of the patent reflects the familiar type of vertical guard, the type found in Walklet and Brunner. Like the older patents, it has a resilient

adapter in order to fit differing profiles, but differs from them in the bulk and configuration of the adapter. One of the adapters produced under the patent is identical with the rubber mounting of the bullet bumper guard, but the invention contains a vertical bumper guard, where the bullet guard does not.

These elements of the prior art have been combined in the patent. The only other difference is that the rearward edges of the vertical guard in the Gass patent are flared outward in order to engage the forward part of the bullet shaped adapter better than would straight edges, and in order to avoid the edges cutting into the adapter. It was not shown that previous vertical guards had been flared, but flaring is a common procedure.

5. *The level of ordinary skill in the pertinent art:.*

The expert witnesses had been involved for a number of years in the design, construction and sale of auto accessories. The level of ordinary skill in the field appears to be that of mechanically inclined men with long experience in design of auto accessories.

■ 6. *Obviousness.* We conclude that the subject matter of the patent would have been obvious to a person having ordinary skill in the art.

There was expert testimony that the subject matter would have been obvious. There was, however, testimony that Mr. Gass, an experienced man, had solved the problem only with difficulty. There was also evidence that Gem had made a success of marketing the patented device, as had defendants, who concededly copied it. The district court's findings on these points involved the determination of credibility, the weighing of evidence, and the drawing of inferences which ordinarily render trial court findings impregnable on review. If Mr. Gass really tried as hard and as long as the court thought he did, before becoming successful, that would indeed be persuasive that the subject matter was not obvious to a person ordinarily skilled. Acknowledging all this, however, we conclude as a matter of law, and from the entire record, that the subject matter was obvious and the patent void.

We ackowledge, too, the statutory presumption of validity of a patent.[6] In our view, the record overcomes it here.

The judgment is reversed and cause remanded for the entry of judgment consistent with this opinion.

KNOCH, Circuit Judge (dissenting).

Reluctantly I find myself in disagreement with the majority. It seems clear to me that the District Judge did follow through the requisite analytical steps in determining that the subject matter here was a new, original and non-obvious combination, despite his omission to say so in so many words. From a consideration of his opinion as a whole, as reported at 258 F.Supp. 494 (1966), I do not conclude that he based his decision solely, as the majority feel, on the degree of commercial success enjoyed by Gem and those who copied the patented device, the filling of a long-felt want, and the difficulties encountered by Mr. Gass himself. I would affirm the judgment of the District Court.