STANDUN, INC., a corporation, Plaintiff,

v.

POLYCRAFT CORPORATION, a corporation, Defendant.

No. 73 C 2484.

United States District Court,
N. D. Illinois, E. D.

June 15, 1976.

Dennis M. McWilliams, Mann, Brown, McWilliams & Bradway, Chicago, Ill., Thomas P. Mahoney, Donald M. Cislo, Mahoney, Schick & Cislo, Santa Monica, Cal., for plaintiff.

Stone, Wagner & Aubel, Chicago, Ill., for defendant.

## MEMORANDUM OF DECISION

FLAUM, District Judge:

This decision shall constitute the court's findings of fact and conclusions of law pursuant to Rule 52(a) following trial of this action from October 14, 1975 to October 31, 1975.

This is an action for infringement of United States Patent 3,040,968 (hereinafter referred to as the '968 patent or the Long patent) entitled "Wrapper for Packaging Produce", issued on June 26, 1962 to H. G. Long and Walton Crane, subsequently acquired by plaintiff Standun, Inc., by assignment. The plaintiff Standun, Inc. is a Cali-

fornia corporation which manufactures a variety of produce wraps, including the embodiment of the patent in suit, the Shrink-Pak wrap. The defendant, Polycraft Corporation, is an Illinois corporation which also manufactures various packaging wrappers for bulk produce including the accused product wraps exemplified in element form in plaintiff's trial exhibits 23 and 45.[1] Jurisdiction over this cause of action arises from the Patent Act, and venue is admittedly proper in this district.

The defendant Polycraft has denied the charge of infringement and has filed a counterclaim seeking a declaration that the Long patent is invalid for failure to satisfy the requirements of the Patent Act. Specifically, the defendant asserts the '968 patent is invalid because the subject matter claimed by the patent in suit was obvious to one with ordinary skill in the art at the time of the alleged invention (35 U.S.C. § 103); the concept of the plaintiff's produce wrap was previously disclosed by another in this country who had not abandoned it (35 U.S.C. § 102(g)); the claimed invention was known or used by others in this country before the invention by the patentee (35 U.S.C. § 102(a)); and the patent fails to describe the best mode of invention with sufficient particularity (35 U.S.C. § 112). The defendant further contends that certain alleged inequitable conduct before the patent office in the prosecution of the patent in suit should bar enforcement in this infringement action. For the reasons stated herein the court finds that the subject matter of the 1968 patent was obvious to a man of ordinary skill in the art at the time of the alleged invention, thus the patent in suit is invalid pursuant to 35 U.S.C. § 103. Accordingly, the additional grounds asserted as a basis for invalidity and the issue of infringement need not be reached.

The patent in suit discloses a wrapper for packaging produce comprised of a sheet of thin pliable plastic material having a plurality of slits disposed in varying arrangements within the central portion of the sheet surrounded by an unslit margin or border. The '968 patent contains eight independent claims, however, only claims 1, 3, 6, and 8 have been placed in issue in this infringement action. Specifically, claim 1 teaches a packaging wrapper of thin pliable plastic material having a central slit area of generally parallel rows of spaced slits, with slits in alternate rows being approximately aligned in the transverse direction of the rows, and the slits in the adjacent rows being offset in the lengthwise direction of the rows. This central slit area is bounded by a solid unslit margin which extends entirely about the slit area. Claim 3 teaches a thin pliable plastic rectangular sheet with a quadrilateral central slit area disposed diagonally of the edges of the sheet in such a manner that the edges of the slit area are parallel to the sides of the sheet. Thus a rectangular slit pattern is formed on a rectangular plastic sheet, with the slit pattern being diagonal to the edges of the sheet. The language of claim 6 is essentially identical to that of claim 1 with the added restriction that the sheet of thin pliable plastic material be a film of thin, pliable transparent plastic material. Claim 8 is a combination claim teaching a produce package of a quantity of produce in conjunction with a thin pliable plastic sheet as described in the claims above, with the slit area of the film overlying the produce and being stretched downwardly along the sides and the margin arranged beneath the produce secured in that position relative to the produce. The claims in issue do not recite any preferred dimensions as to the spacing, length or number of slits, the width of the border or the thickness of the material.

The patent in suit operates in a familiar fashion: The bulk produce is placed over the slitted area of the plastic sheet, the corners of the sheet are drawn up over the produce, joined together and securely fastened by an overhand knot. Alternatively,

---

1. The accused product in its current commercial form consists of a sheet of thin plastic material having a central slit area bounded by an unslit border. The slit area extends diagonally relative to the edges of the sheet, and is comprised of parallel rows of pairs of spaced slits. The use and operation of the accused wrap is similar to the patent in suit.

the sheet may be used with a produce basket by placing the slitted area of the sheet over the basket and allowing the weight of the produce to expand the sheet in conformity to the shape of the produce. Regardless of the mode of use, the slitted area of the sheet conforms to the shape of the produce and forms a bag or pocket for the produce wrapped.[2]

The development of the art of wrapping produce may be traced according to the development of new materials responsive to the needs of produce packagers and retailers. In 1908, a patent issued to Woodward (No. 882,134) recognized that "where fruit is intended for shipping it is ordinarily wrapped in a sheet of paper which forms a protective covering and prevents the fruit from being bruised or otherwise injured so as to detract from its market value." (col. 1, lines 12–16). The Woodward patent teaches the use of thin flexible paper with perforations to allow ventilation and circulation of air. By 1912 paraffin or waxed paper was suggested as a desirable material for preserving fruits and vegetables in transit. (DuJardin Patent No. 1,018,812). With the growth of mass merchandising emphasis shifted from preservation and protection in transit to preservation and protection in retail displays. The development of thin pliable transparent plastics satisfied the needs of the packaging industry in that it provided an inexpensive yet sturdy wrap to preserve and protect bulk produce, while it allowed the prospective customer to examine the produce without decreasing the salability of the item. This material was so well suited to the requirements of produce packagers that by the late 1950's packaging companies in Great Britain, France, and the United States developed remarkably similar wraps to meet the growing demand for efficient transparent wrapping materials. All these developments focus on providing circulation of air and moisture to the produce, tight fit about the produce wrapped, and ease of handling.

And all these developments refine the pre-existing and widely used transparent plastic wraps for more effective application to produce retailers.

*Obviousness*

In *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) the Supreme Court outlined the three step analysis required for a determination of patent validity under 35 U.S.C. § 103.

> Under § 103 the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. 383 U.S. at 18, 86 S.Ct. at 694.

*See also, Deep Welding, Inc. v. Sciaky Bros., Inc.*, 417 F.2d 1227 (7th Cir. 1969); *Appleton Electric Co. v. Efengee Electrical Supply Co.*, 412 F.2d 579 (7th Cir. 1969).

The scope and content of the prior art relevant to the patent in suit spans nearly seventy years in the packaging industry. As noted above, the earliest file wrapper reference is the patent issued to Woodward in 1908 (No. 882,134) entitled "Wrapper for Fruits". Woodward teaches the use of a rectangular sheet of thin flexible material, such as paper, with a central portion provided with perforations arranged in a series of concentric rings to permit free circulation of air to the produce. The corners of the rectangular sheet are unperforated "tabs" used for securing the wrapper about the fruit by twisting these corners together. The patent diagram indicates a continuous border at the edges of the rectangular sheet, entirely without perforations, to be used as a stable means for securing the wrapper about the fruit by twisting. The perforated central portion of the wrapper allows moisture to enter and escape, while

---

**2.** The specification of the patent in suit notes that the slit arrangement enables the wrapper to form itself into a bag-like structure (col. 2, line 1), molding itself in nice conformance with the packaged object (col. 2, line 4 and col. 3, lines 4–5) comprising a pocket (col. 2, line 61 and col. 3, lines 30–38).

the unperforated edges allow for sealing by twisting without tearing the wrapper.

The Woodward patent teaches the use of a wrapper to protect and preserve produce and to retain the integrity of the item wrapped, but it does not claim a slit configuration capable of conforming to the shape of the produce. However, the concept of using staggered slits or cuts in the interior of an article to allow for an expansion in size or to permit close shaping to an object is old in both analogous and non-analogous art. For example, the patent issued to Norris (No. 2,294,478) teaches the use of a staggered slit pattern on flexible material and notes that the length of the slits and the distance between the slits may be adjusted to alter the extensibility of the sheet. In the Parlow patent (No. 1,996,254) entitled "HAT" a flat piece of semirigid cardboard may form a hat by use of multiple slits in an offset relation permitting expansion of the material at right angles to the original flat planar surface. Similarly, the patent issued to Evans (No. 2,203,084) teaches a method for extending a panel or sheet over an area greater than it normally occupies by use of staggered or offset cuts in the material. In like manner the patent issued to Decker (No. 2,382,400) discloses a paper wrapper capable of expansion in conformity to the shape of the item wrapped by means of a plurality of rows of short slits offset in relation to adjacent rows. Indeed the Long patent itself makes reference to this expansion slit pattern as used in the art of "expanded metal" enabling a flat sheet to stretch and expand in a transverse direction to the direction of the rows of slits. (Long patent col. 2, lines 42–46).

■ Apparently the first use of this slitted pattern for expansion in connection with flexible plastic film used for wrapping bulk produce may be found in the British patent (No. 793,015). The publication of this patent more than one year prior to the filing date of the Long patent application entitles it to prior art status under 35 U.S.C. § 102(b), however, it was not cited to the patent examiner during prosecution of the patent in suit. The British patent teaches a produce wrapper and the machine for its manufacture. The wrapper is comprised of thin flexible plastic film having a plurality of parallel rows of spaced slits. The slit pattern consisting of staggered rows of parallel slits may be arranged parallel to the edges of the sheet of plastic film, or they may be disposed diagonally of the sheet of plastic film at a 45° angle. The British patent specifically teaches the concept of extensibility by a pattern of slits for use with a plastic film as an improved method of packaging produce. The patent states that "the pattern of slits may be such that the extensibility of the material is increased, which assists the efficient packaging of irregularly shaped articles." (Page 1, col. 2, lines 86–87, page 2, col. 1, lines 1–3). The patent specification further states that the "lengths of the slits are such that they permit substantial entry of air to goods enclosed . . . without permitting intolerable sagging of the material between the slits or intolerable weakening of the packaging material." (Page 2, col. 2, lines 92–97). The plaintiff has argued that this language constitutes a contrary teaching to the expansibility teaching of the Long patent in suit, however, such an interpretation belies the plain meaning of the teachings of the British patent regarding expansion for conformity to irregularly shaped articles of produce. The British patent combines the ventilation teachings of the Woodward patent and the well known expansion principles of the Norris, Parlow, Evans, and Decker patents in conjunction with the use of a thin plastic film. However, the British patent does not teach the use of continuous unslit border surrounding the slit area.

■ The defendant has argued that the patent issued to Sykes (No. 2,106,921) entitled "Fruit Packaging Separator" is pertinent prior art to the patent in suit and renders the patent in suit obvious. The Sykes patent teaches a separator comprised of a sheet of flexible material, preferably medium or heavy weight paper or light cardboard, with a continuous unslit marginal portion and a central area having a plu-

rality of staggered slits arranged parallel or diagonal to the edges of the separator. The Sykes patent is intended to function as a separator between levels of fruit packaged for transit by teaching a semirigid support with slits to allow for deformation to automatically adjust itself to shifting fruit. The Sykes claims specifically call for a "flexible" material, and the court finds that the patent teaches that the "flexible" material must be sufficiently rigid to support the weight of the rows of fruit. Conversely, the Long patent claims a "thin, pliable, plastic material" capable of functioning as a wrapper about the fruit. The defendant contends that a product made according to the teaching of Sykes using the thin, pliable, plastic material of Long rather than the flexible material of Sykes, would be identical to the embodiment of the patent in suit. However, such a product would not comply with the functional teachings of Sykes, which requires some rigidity for planar support. Accordingly, the court places little reliance on the Sykes patent in this analysis of prior art, finding Sykes to be non-analogous prior art which is a coincidental replica of the diagram of the patent in suit, but teaches a different function and use.

■ The second step in the *Graham v. John Deere and Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966) analysis is to ascertain the difference between the prior art and the claims of the patent in suit. The '968 patent claims a specific staggered slit arrangement on thin pliable plastic film surrounded by an unslit border and disposed parallel or diagonal to the edges of the sheet. The claim language does not specifically articulate the bagging function which the claimed slit arrangement necessarily produces. Rather the inherent bagging function is disclosed in the preamble and specification. Ordinarily, the claims of the patent are the metes and bounds which measure the patent grant. *Aro Mfg. v. Convertible Top Replacement Co.*, 365 U.S.

336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961). However, the preamble and specification should not be ignored in the obviousness analysis where they disclose a functional property or limitation on the claims. *See Reese v. Elkhart Welding and Boiler Works, Inc.*, 447 F.2d 517 (7th Cir. 1971); *Union Carbide Corp. v. Filtrol Corp.*, 170 USPQ 482 (D.C.Cal.1971); *W. R. Grace and Co. v. Park Mfg. Co.*, 378 F.Supp. 976 (E.D. Ill.1974). Although the bagging feature is not specifically claimed, that function is inherent in the claimed slit arrangement, thus it may be considered in evaluating the obviousness of the patent in suit. In recognizing that this expansibility feature is inherent in the staggered slit pattern of Long, the court also notes that the same expansibility feature is inherent in the Norris, Parlow, Evans and Decker patents. Similarly, the expansibility concept disclosed in the British patent specification may be viewed as an inherent function of a particular slit arrangement. Thus the plaintiff's claimed invention is comprised of the parallel or diagonal disposition of staggered slits on thin pliable, plastic with the slits confined to a central area and surrounded by a solid unslit border, forming a wrapper capable of bagging or conforming to the shape of the produce wrapped.

■ The differences between that claimed invention concept and the teachings of the prior art are slight indeed. It is not disputed that the use of thin pliable plastic material cannot bestow invention on the patent in suit as use of this material in the packaging industry predates the alleged date of invention. The use of openings for ventilation to allow the entry and escape of moisture in conjunction with a solid border for ease of handling and secure fastening is fully disclosed in the Woodward patent.[3] The use of slits in varying staggered arrangements to provide extensibility to a flat sheet of material is an established principal in analogous and non-analogous art. (Norris, Parlow, Evans and Decker patents).

---

**3.** The court notes that the substitution of one material (pliable plastic) for another (paper) within the same art is not of patentable significance. *Continental Can Co., Inc. v. Anchor Hocking Glass Corp.*, 362 F.2d 123 (7th Cir. 1966).

The application of these teachings to thin pliable plastic film is taught in the prior art publication of the British patent. These patents do not fully disclose the teachings of the patent in suit, as Woodward does not have expandable staggered slits, and the British patent does not have a continuous unslit border or the specific slit arrangement taught by Norris, Parlow, Evans and Decker. However, these patents do disclose each of the elements which in combination comprise the claims of the patent in suit. The patent in suit unites the old elements of ventilation, ease of handling, expansibility by staggered slits, and slit arrangements on inexpensive plastic film without change in the respective functions of the old elements and without an effect greater than the sum of the effects of the elements separately. *Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162 (1950); *Anderson's Black Rock Inc. v. Pavement Salvage Co., Inc.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969). Every element of claims 1, 3, 6, and 8 of the patent in suit may be traced to the teachings of the prior art patents and publication, the Long patent merely combines these old elements of Woodward, Norris, Parlow, Evans, Decker and the British patent publication, in a single produce wrap.

The final step in the *Graham v. John Deere and Co.* obviousness analysis is the determination of the level of skill in the art, that is, a determination of "whether a hypothetical person having ordinary skill in the art would have readily found the same solution when addressing himself to the same problem." *Gass v. Montgomery Ward & Co.*, 387 F.2d 129, 130 (7th Cir. 1967). In the instant case, that hypothetical inventor is presumed to be familiar with the prior art teachings of the Woodward patent (thin, pliable, rectangular sheet with a central perforated area and a solid border) the expansibility patents (staggered rows of slits to increase the area a flat sheet can encompass) and the British prior art publication (staggered slits for expansion and ventilation in thin, pliable, plastic film). Given this prior art background, the court finds that the hypothetical inventor would find the same solution as did Long in the patent in suit.

This conclusion is bolstered by the simultaneous development of similar produce wraps by other inventors in the art in France, Great Britain, and the United States. *See e. g., Laminex, Inc. v. Fritz*, 389 F.Supp. 369 (N.D.Ill.1974); *Popeil v. Schick*, 356 F.Supp. 240 (N.D.Ill.1972). For example, the French patent issued to Bonnier (No. 1,196,788) in May of 1959 discloses a produce wrap of paper, cellulose, or plastic sheets having a concentric disposition of scores capable of separating to permit an increase in the surface area of the sheet to encompass the produce. When the wrapper is grasped at a specific angle, the scores "separate and form a net for carrying the fruit". (French patent at 2). Like the Long patent in suit, the French patent teaches the use of an arrangement of staggered and aligned scores to achieve the desired stretchability of the wrapper under the weight of the produce.

■ A further example of simultaneous invention of a similar produce wrapper is found in the Kennedy Invention Record of the Diamond Match Co., dated January 12, 1959, entitled "Improved Girdle Wrap for Produce Trays". The Invention Record teaches the use of cuts or slits on a thin film of clear pliable plastic to give it the flexibility and extensibility needed to follow the contours of the produce. The Kennedy slit arrangement cuts the film in alternate strips in a staggered or offset relation, and produces the ribbon-like effect taught by the Long patent in suit. The sample wrap embodying the teachings of the Kennedy Invention Record consists of a central slit area, hexagonal in shape, (see attachment to Invention Record) surrounded by an unslit border. The defendant has argued that the invention record qualifies as prior art under 35 U.S.C. § 102(g), asserting that the date of reduction to practice by Long and Crane has not been established. The court finds that plaintiff has sustained the burden of proving reduction to practice in the summer of 1958 through the testimo-

ny of Crane and Newman and the depositions of Long and Poindexter. As the patent in suit was reduced to practice prior to the date of the Kennedy Invention Record, the Invention Record cannot be considered as prior art. However, the Kennedy Invention Record is an accurate gauge of the level of skill in the art at the time of the claimed invention by Long, as it evidences simultaneous development by another in the art of the same solution to the same problem. The Kennedy Invention Record teaches the extensibility of thin pliable plastic wrap by means of staggered or offset rows of slits with a solid unslit border for ease of handling.

Lastly, the British patent (discussed above as prior art of the patent in suit) published in April of 1958 teaches the use of varying slit arrangements on a thin pliable plastic sheet to control the expansibility of the material for efficient packaging of irregularly shaped articles of produce. When considered as another simultaneous development in the art, this evidence is persuasive as to the level of skill in the art.

■ The plaintiff correctly argues that the developments of others should not operate as a per se rule to deprive a patentee of the protections of the patent grant, and this court has not used the evidence of simultaneous developments as a bar to the validity of the Long patent. See, Jursich v. J. I. Case Co., 350 F.Supp. 1125 (N.D.Ill.1972). Rather, the French and British patents and the Kennedy Invention Record provide support for the court's independent determination that a hypothetical inventor with knowledge of the Woodward patent, the extensibility patents and the British prior art publication would find the same solution to the problem addressed in the patent in suit. These simultaneous developments, particularly the Kennedy Invention Record, accurately reflect the level of skill in the art and indicate that the combination of the ventilation principle and solid border of the Woodward patent, the teachings of the extensibility patents to allow conformity to the object wrapped, and use of staggered slits on thin, pliable, plastic material of the

British patent, would have been obvious to one of ordinary skill in the art. The additional restrictions of the Long patent of transparent plastic material (claim 6) and the diagonal disposition of the slits (claim 3) are referred to in the Kennedy Invention Record and the British patent, and are not patentably significant.

■ Accordingly, the court concludes that the scope and content of the prior art was such that the differences between the patent in suit and that art would have been obvious to one of ordinary skill within the packaging art. The court has scrutinized the Long patent combining old elements in the art "with the care proportioned to the difficulty and improbability of finding invention in an assembly of old elements", and finds that claims 1, 3, 6, and 8 of the Long patent are invalid. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152–53, 71 S.Ct. 127, 95 L.Ed. 162 (1950); Anderson's Black Rock Inc. v. Pavement Salvage Co., Inc., 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258 (1969); Skil Corp. v. Lucerne Products, Inc., 503 F.2d 745 (7th Cir. 1974).

■ Plaintiff has placed great reliance on the secondary indicia of non-obviousness, the considerations of commercial success, long felt need, and copying of the product by competitors. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1965). The plaintiff's product has enjoyed some commercial success since 1966, subsequent to the concentrated promotional and marketing efforts in the packaging industry. However, plaintiff Standun has failed to prove that the limited success of the product is related to the claimed features of the patent and thus the evidence lacks conclusive probative value on the issue of obviousness. See, Endevco Corp. v. Chicago Dynamic Industries, Inc., 268 F.Supp. 640 (N.D.Ill.1967); T. P. Laboratories, Inc. v. Huge, 371 F.2d 231 (7th Cir. 1966). Therefore, the court finds that plaintiff has failed to adequately establish commercial success based on the claimed features of the Long patent. Assuming,

arguendo, that proof of the secondary considerations had been established at trial, the law is clear that these secondary considerations cannot satisfy the test of patentability in the absence of invention. *Scott Paper Co. v. Fort Howard Paper Co.,* 432 F.2d 1198 (7th Cir. 1970).

In response to the defendant's argument of invalidity, the plaintiff Standun Inc. has placed great reliance on section 282 of the Patent Act which provides that "a patent shall be presumed valid". Where the prior art relied upon by the party asserting invalidity has been considered by the patent examiner, the statutory presumption is strong. *Henry Mfg. Co., Inc. v. Commercial Filters Corp.,* 489 F.2d 1008 (7th Cir. 1972). However, that presumption "never becomes so strong that the patent is completely unassailable." *Chicago Rawhide Mfg. Co. v. Crane Packing Co.,* 523 F.2d 452, 458 (7th Cir. 1975); *Research Corp. v. Nasco Industries,* 501 F.2d 358 (7th Cir. 1974). In *Chicago Rawhide,* the Seventh Circuit evaluated the effect of the statutory presumption of validity, noting that "a demonstration that the art considered by the Patent Office is the same art considered by the court strengthens the presumption in the sense that it provides the justification for the requirement that invalidity be established by clear and convincing evidence, but such a demonstration is not also a bootstrap that lifts the presumption to a still higher level." 523 F.2d at 458. In the instant case the British patent was not cited to the patent examiner during the prosecution of this patent, thus the presumption of validity is weakened. *King-Seeley Thermos Co. v. Tastee Freez Industries,* 357 F.2d 875 (7th Cir. 1966); *Novo Industrial Corp. v. Standard Screw Co.,* 374 F.2d 824 (7th Cir. 1967). Additionally, the court finds the evidence of obviousness in light of the prior art to be clear and convincing, thus the statutory presumption of validity cannot be dispositive in this litigation.

In concluding, the court recognizes that much evidence was educed at trial relating to the connection between the Safeway Food Market chain and the parties to this patent action. This evidence is relevant to the resolution of the patent issues in this action in only two respects, as it might tend to show copying by the defendant (a secondary consideration in the obviousness analysis under section 103), and it might tend to show willful infringement by Polycraft. In regard to the first, the evidence is insufficient to overcome this court's finding of invalidity by the clear and convincing evidence of the prior art. As regards the second, the determination of invalidity obviates the necessity of reaching the infringement issue.

For the reasons stated in this decision, the court finds that claims 1, 3, 6, and 8 of the Long patent in suit are invalid and unenforcible as they were obvious to one of ordinary skill within the art at the time of the claimed invention. Therefore, judgment is entered for the defendant Polycraft on the plaintiff's complaint of infringement and on the counterclaim of invalidity.

The parties have argued that the facts of this case constitute an "exceptional case" within the meaning of section 285 of the Patent Act. However the court finds that the record lacks evidentiary support of an "unambiguous showing of extraordinary misconduct", thus an award of attorneys fees is unwarranted. *Airtex Corp. v. Shelley Radiant Ceiling Co.,* 536 F.2d 145 (7th Cir. 1976).

Accordingly the motions for an award of attorney fees are DENIED.